IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1243-05






RYAN WILLIAM MADDEN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., delivered the opinion of the unanimous Court.


O P I N I O N 



 A jury convicted appellant of possession of cocaine with intent to deliver. The cocaine
had been found hidden in the trunk of appellant's rental car after appellant was stopped for
speeding. During trial, the judge denied appellant's request for an Article 38.23 jury instruction
regarding the legality of his continued detention after the officer completed his investigation
of the traffic offense. With one justice dissenting, the court of appeals held that it was error
for the trial court not to give the Article 38.23 instruction on the reasonableness of the
continued detention. (1) We granted the State's petition for review to determine whether the
evidence raised a disputed fact issue for the jury to decide concerning whether the officer had
reasonable suspicion to continue to detain appellant. (2) In this case, there was insufficient
evidence to raise a fact issue that placed the constitutional validity of appellant's detention in
issue. (3) Thus the trial court did not err in refusing to give an Article 38.23(a) instruction.

I.


 The evidence at trial showed that D.P.S. Trooper Lily saw two cars speeding through a
55 m.p.h. construction zone on Interstate 10 in Harris County. Both had Florida license plates. 
The lead car was a gray Dodge; the second one was a green GMC Jimmy. When the driver of
the Jimmy saw Trooper Lily, he accelerated, passed the gray Dodge, and began to tailgate an
18-wheeler. From his D.P.S. training on drug convoy tactics, Trooper Lily thought that the
Jimmy was trying to divert his attention from the gray Dodge. Trooper Lily thought that the
gray Dodge might be ferrying drugs. He clocked the speed of the gray Dodge at 61 m.p.h. and
that of the green Jimmy at 63 m.p.h. He stopped both cars and he turned on his patrol-car
dashboard video camera to record the incident.

 Appellant was driving the gray Dodge. He had a pit bulldog in the backseat. Trooper
Lily said that appellant's hands were "shaking tremendously" and his face was trembling. He
fumbled for his wallet. At first appellant couldn't answer Trooper Lily's question about where
he was coming from, but then he said "Burlestine" up near Dallas. Trooper Lily stated that
appellant was "pointing in a very nervous manner that he didn't really know where he was
coming from." Appellant said that he was driving a rental car. When appellant gave Trooper
Lily the car rental agreement, the trooper saw that the car had been rented in Orlando, Florida,
and that the rental agreement had expired four days earlier. When Trooper Lily asked him who
he was traveling with, appellant responded that he was by himself. Trooper Lily asked appellant
if he had ever been arrested before. Appellant said that he had a prior DUI arrest. By this time,
Trooper Lily was suspicious:

 I felt that some crime was afoot by the way he was so nervous, the way he was
answering my questions and the other vehicle trying to divert my attention from
him. I felt like they were trying to hide something.


Trooper Lily asked his dispatcher to run appellant's Florida driver's license. The dispatcher
said that appellant had a 1996 arrest for larceny. At this point, Trooper Lily requested backup
and a Harris County K-9 unit.

 When his backup arrived, Trooper Lily questioned the two men in the green Jimmy
which had stopped about 100 yards away. They also had Florida driver's licenses and said that
they knew appellant. They said that they had stayed in Arlington, Texas, for the last two days. 
Appellant had said that he had been staying with his family while in Texas, but, when confronted
with his friends' statements, appellant said that he was traveling with the other men and had
stayed with their family.

 When the K-9 unit arrived, the dog alerted on both the trunk of appellant's Dodge and
the back of the Jimmy. Lily searched the trunk of appellant's car and found a Rubbermaid
container filled with both dog food and a book bag with three bricks of cocaine inside, a rifle,
a shotgun, three handguns, and ammunition. Although the Jimmy did not have any drugs in it,
both cars had two-way radios in them.

 During trial, both the State and the defense played Trooper Lily's patrol-car video
recording several times for the jury. On the tape, appellant could be heard disputing the fact
that he had been speeding. He said that he was driving with his cruise control set at 55 m.p.h. 
Although defense counsel vigorously cross-examined Trooper Lily, intimating that appellant's
face was not trembling on the video recording and that his hands were not shaking, Trooper Lily
repeatedly and consistently asserted that appellant was nervous, that his hands were shaking,
and that his face trembled. When defense counsel asked Trooper Lily why he, defense counsel,
couldn't see that nervousness on the videotape, Trooper Lily said that he saw it on the video,
but it wasn't clear because the quality of the tape was so bad. (4) 

 Appellant did not testify, and there were no other witnesses who testified to the initial
stop or the detention.

 During the jury-charge conference, the trial judge told the attorneys, "it seems to me
that the only contested fact issue is concerning the original stop of the car." Appellant's
attorney claimed that the videotape disputed Trooper Lily's testimony that appellant "was
nervous, he lied about his criminal history and all those other matters." He submitted a written
requested instruction about the legality of Trooper Lily's continued detention. (5) The trial judge
responded,

 Let's pause there. I see from the tape that there is a disputed fact issue
because I think the defendant's saying on the tape: I was only going 55-makes
a disputed fact issue on whether or not there was probable cause to pull the
defendant over. So, I agree that there should be a charge on that issue.

 So, let's just look at that for one moment and talk about the appropriate
language to go in that charge and then-I don't think there are any disputed fact
issues from that point on.

 The tape is in evidence. (6) There is no disputed fact issue. The only
testimony is the tape and the officer's testimony concerning things he saw and
there is no disputed issue, fact issue, I don't think that anything beyond that
properly goes to a jury.


Therefore, the trial judge submitted an instruction on the disputed fact issue of whether
Trooper Lily reasonably believed that appellant was speeding at the time he made the traffic
stop, (7) but declined to submit any instruction concerning Trooper Lily's continued detention
of appellant.

 The jury convicted appellant and sentenced him to thirty years' imprisonment.

 A majority of the court of appeals panel disagreed with the trial judge. It concluded, 

 The question of whether Lily's testimony about appellant's conduct is
contradicted by what the videotape shows is a fact issue for the jury to decide;
that is, the jury had to decide whether appellant was shaking, trembling, and
fumbling with his wallet, based on Lily's testimony and the videotape. (8)


Justice Keyes dissented. She noted that


 there is no factual dispute sufficient to raise an issue for the jury as to whether
Officer Lily had reasonable suspicion to continue appellant's detention. There
is only a dispute over whether the videotape is sufficiently clear in showing that
appellant's hands were not shaking to refute Officer Lily's testimony that 
[appellant] was nervous and his hands were shaking. As the Court of Criminal
Appeals observed in Garza, "That appellant disagrees with the conclusion that
probable cause was shown as a matter of law" is not the same as appellant's
controverting the facts of the search. Even if there is a dispute over appellant's
visible nervousness, hence over Officer Lily's credibility in this regard, this
dispute is not enough to raise a fact issue as to the legality of the search. (9) 


 We granted review to clarify what type of evidence suffices to raise a disputed material
fact issue that requires the submission of a jury instruction under Article 38.23(a).

II.


 A defendant's right to the submission of jury instructions under Article 38.23(a) is 
limited to disputed issues of fact that are material to his claim of a constitutional or statutory
violation that would render evidence inadmissible. (10) We have previously explained:

 The terms of the statute are mandatory, and when an issue of fact is
raised, a defendant has a statutory right to have the jury charged accordingly. 
The only question is whether under the facts of a particular case an issue has
been raised by the evidence so as to require a jury instruction. Where no issue
is raised by the evidence, the trial court acts properly in refusing a request to
charge the jury. (11)


There are three requirements that a defendant must meet before he is entitled to the
submission of a jury instruction under Article 38.23(a):

 (1) The evidence heard by the jury must raise an issue of fact; 


 (2) The evidence on that fact must be affirmatively contested; and


 (3) That contested factual issue must be material to the lawfulness of the challenged
conduct in obtaining the evidence. (12)

There must be a genuine dispute about a material fact. (13) If there is no disputed factual issue,
the legality of the conduct is determined by the trial judge alone, as a question of law. (14) And
if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct,
then the disputed fact issue is not submitted to the jury because it is not material to the
ultimate admissibility of the evidence. (15) The disputed fact must be an essential one in deciding
the lawfulness of the challenged conduct. (16)

A. Appellant Did Not Request an Instruction on a Disputed Fact.

 The first requirement for obtaining a jury instruction under Article 38.23, is that the
defendant requests an instruction on a specific historical fact or facts. The jury decides facts;
the judge decides the application of the law to those facts. (17) 

 In this case, the trial judge gave a jury instruction on the disputed fact issue of whether
Officer Lily reasonably believed that appellant was speeding at the time he stopped appellant's
car. She gave that instruction because she heard appellant say, on Sgt. Lily's patrol-car video
recording, that he was driving 55 m.p.h., while Sgt. Lily testified that appellant was driving 61
m.p.h. Thus, appellant's speed was a contested fact. If Officer Lily did not reasonably believe
that appellant was going faster then 55 m.p.h., then, under the Fourth Amendment, he should
not have stopped appellant, and all evidence obtained as a result of that stop would be
inadmissible. The trial judge's instruction correctly submitted that factual issue for the jury
to decide, along with an explanation of the pertinent law.

 Applicant requested a second jury instruction dealing with his continued detention after
Officer Lily had decided to issue him a warning ticket for speeding. This requested instruction
was wholly incorrect. (18) It did not ask the jury to decide a disputed issue of historical fact. It
asked the jury to decide a question of law-whether Officer Lily had "reasonable suspicion" to
continue to detain appellant. "Reasonable suspicion," in this context, is not the type of
suspicion, hunch, or notion that the ordinary person might have. Rather, it is a legal term of
art. The jury, however, is not an expert on legal terms of art or the vagaries of the Fourth
Amendment. It cannot be expected to decide whether the totality of certain facts do or do not
constitute "reasonable suspicion" under the law. That would require a lengthy course on Fourth
Amendment law. Even many experienced lawyers and judges disagree on what constitutes 
"reasonable suspicion" or "probable cause" in a given situation. It is the trial judge who
decides what quality and quantum of facts are necessary to establish "reasonable suspicion." 
Only if one or more of those necessary facts are disputed does the judge ask the jury to decide
whether the officer's belief in those facts was reasonable. 

 Looking just at appellant's requested jury instruction, neither the trial judge, the court
of appeals, nor ourselves could have any idea of what specific fact or facts appellant believed
were in dispute. In his Brief to this Court, appellant claims that all of the facts that Officer
Lily relied upon to establish "reasonable suspicion" were in dispute. But when the trial judge
asked appellant to tell her precisely what facts he thought were in dispute, he focused primarily
on the question of appellant's nervousness (as did the court of appeals). (19)
 At the end of
appellant's explanation, the trial judge stated,

 I think the record is clear on what you are saying are factual disputes. I do not
think that there are any factual disputes to be determined by a jury. I think all of
the things that you are setting out are for an Appellate Court, if it goes there, to
decide whether or not those things rise to the level of what they believe in 2002
will allow an officer to keep them there the 15 minutes it took to get the drug
dog there and I do not think that there are any factual disputes.


The trial judge was correct. What appellant wanted was a jury instruction on whether the
totality of facts that Officer Lily listed constituted "reasonable suspicion" under the Fourth
Amendment. Appellant's proposed instruction focused only on the law. It did not set out any
specific historical fact (e.g., face trembling, hands shaking, fumbling for wallet, etc.) that the
jury was to focus upon and then decide if Officer Lily was unreasonable in relying upon these
indications of "nervousness" as a basis for his articulable suspicion to detain. The same was
true of appellant's argument to the trial judge concerning the wording of his proposed
instruction:

 [W]e just contend that pursuant to 38.23 of the Texas Code of Criminal
Procedure and the Fourth Amendment and the Fourteenth Amendment that
the-that the issue of reasonable suspicion to continue the detention is in dispute
in this case. Whether or not the factors that were given by the officer, which we
contend are just either wrong or fictitious or made up, that is reflected in the
State's Exhibit No. 1, the videotape of this, that this is an issue that the jury as
fact finder must wrestle with to determine whether or not the continued
detention violated the Fourth and Fourteenth Amendments to the United States
Constitution and, therefore, were in violation of 38.23 and they should
disregard. That's the thrust of our argument.


But the jury cannot "wrestle with" the legal determination of whether certain facts do or do not
constitute "reasonable suspicion." (20) Because appellant never presented a proposed jury
instruction that asked the jury to decide disputed facts, any potential error in the charge should
be reviewed only for "egregious harm" under Almanza. (21)

 But there was no error at all because there was no conflict in the evidence that raised
a disputed fact issue material to the legal question of "reasonable suspicion" to detain him.

B. There Was No Conflict in the Evidence.

 To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must
be some affirmative evidence that puts the existence of that fact into question. (22) In this
context, a cross-examiner's questions do not create a conflict in the evidence, although the
witnesses's answers to those questions might. (23) 

 Here, for example, one issue was whether appellant exceeded the speed limit of 55
m.p.h. through a construction site, giving Officer Lily a reasonable suspicion to stop him. If
Officer Lily testifies that appellant did speed and Witness Two (or appellant) testifies that he
did not speed, this disputed factual issue must be submitted to the jury. If the jury finds that
appellant did obey the speed limit and that Officer Lily was unreasonable in believing that he
did not, then they may not consider the evidence obtained as a result of this unlawful detention. 
If, however, Officer Lily says that appellant did speed, and Witness Two (or appellant) says that
he doesn't remember or doesn't know, there is no disputed fact to submit because there is no
affirmative evidence of a factual conflict. Similarly, if Officer Lily testifies that appellant did
speed, but the cross-examiner grills him, "Isn't it true that he really did obey the speed limit,
you're wrong or you're lying?" there is no factual dispute unless Officer Lily admits, "Yes, that
is true." (24) The cross-examiner cannot create a factual dispute for purposes of an Article
38.23(a) instruction merely by his questions. (25) It is only the answers that are evidence and may
create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the
Cretan Liar does not raise a disputed issue. (26) There must be some affirmative evidence of "did
not speed" in the record before there is a disputed fact issue. (27) Because there was such
evidence in this record, the trial judge properly gave a jury instruction on this disputed fact.

 But appellant also claimed that Officer Lily did not have reasonable suspicion to detain
him once he decided to give appellant a speeding ticket. At trial, he argued that he had raised
a disputed fact issue on appellant's nervousness, and a majority of the court of appeals agreed
with him. (28) At trial, Officer Lily repeatedly listed the facts that he relied upon in concluding
that he had reasonable suspicion to detain appellant until the drug dog arrived:

 (1) Appellant's gray Dodge and the following green GMC Jimmy, both of which had
Florida license plates, appeared to be traveling in a "convoy" as many drug
dealers do;


 (2) When the driver of the green Jimmy saw Officer Lily, he sped up, passed the
gray Dodge, and began tailgating an 18-wheeler as a "diversionary" tactic so that
Officer Lily would stop the green Jimmy, not the gray Dodge; this, too,
according to Officer Lily, is a common tactic of drug transporters;


 (3) When Officer Lily approached appellant, appellant's hands were "shaking
tremendously"; his face was "trembling";


 (4) Appellant fumbled in pulling out his wallet, again exhibiting nervousness;


 (5) At first appellant was uncertain of where he came from, then he said
"Burlestine" up near Dallas; his explanations of where he had come from, how
long he had been there, and where he was going were internally inconsistent;

 

 (6) Appellant said the gray Dodge was a rental car; Officer Lily knew that rental cars
are frequently used by drug dealers, and when Officer Lily looked at the rental
agreement papers, he saw that the car should have been returned in Florida four
days earlier;


 (7) When Officer Lily asked him about any prior arrests, appellant responded that
he had a prior DUI, but when Officer Lily checked, his dispatcher told him that
appellant had been arrested in 1996 for larceny.


The trial judge implicitly found that the totality of these facts was sufficient to support a
finding of "reasonable suspicion," and she denied appellant's motion to suppress the evidence
of drugs and guns found in the trunk of the gray Dodge appellant was driving. (29)

 Appellant argues that his cross-examination of Officer Lily, coupled with the contents
of Officer Lily's dashboard-mounted video recorder, raised a disputed issue of fact that
appellant's hand were not really shaking with nervousness and that his face was not trembling. 
Appellant extensively cross-examined Officer Lily on these facts, but the officer never
admitted that he was wrong about appellant's nervous behavior. (30) Appellant's questions on
cross-examination cannot, by themselves, raise a disputed fact issue. There must be some
affirmative evidence to raise a fact issue.

 Appellant also relies upon the contents of State's Exhibit No. 1, the patrol-car
videotape. We have not seen that videotape because it is not in the appellate record. We
cannot rely upon the purported contents of some exhibit that is not before us. The trial judge,
however, did view the videotape several times during trial. She concluded that it did not raise
any disputed fact concerning appellant's nervousness. That is, she did not see anything on the
video that affirmatively disputed Trooper Lily's testimony concerning that fact. But this is not
a dispute about the historical facts, nor is it a dispute about whether the videotape shows some
of the facts about which Trooper Lily testified. The real factual issue is whether Trooper Lily
reasonably believed that appellant was acting in a nervous manner, not whether the videotape
shows appellant acting in a nervous manner. (31) Only if the video clearly showed that appellant
affirmatively did not do something that Trooper Lily said that he did do, and the video clearly
would have shown that conduct if it had occurred, would there be some affirmative evidence
of a disputed historical fact. But the video recording in this case apparently does not show
much of anything with clarity.

 The attorneys and witnesses agreed that the quality of the video recording was very
poor. It was so poor, in fact, that from appellant's copy, it appeared that the drug dog had not
alerted on appellant's car. It was only when the defense drug-dog expert viewed the State's
copy that he could discern that the dog physically alerted and he could hear the dog's
scratching. He blamed the quality of the video recording itself for his mistake in thinking that
the drug dog had not alerted. 

 Trooper Lily forthrightly admitted that the video was of poor quality and that is why he
narrated his observations (including his observations of appellant's nervous behavior) into his
shoulder microphone at the same time that he observed them. (32) Trooper Lily explained why
appellant's attorney could not see appellant's nervous behavior on the tape, "I guess it's a dark
tape. The State, they get low-budget tapes. Maybe that's why. I don't know. I mean, you can't
even see my face on this videotape, so-." This lack of visual clarity is not surprising. 
Dashboard-mounted video cameras do not create Cecil B. DeMille productions. The question
for the trial judge, who actually saw the videotape, is whether, given the quality of the recording
and the distance between the camera and appellant, the video would have shown appellant's
nervous gestures and appearance had they occurred. She decided that what she saw did not raise
a contested fact issue. We will defer to her assessment of the exhibit, especially as we do not
have that exhibit before us.

C. Trooper Lily's Reasonable Suspicion Did Not Depend on Appellant's
Nervousness or Lack Thereof.


 Even if the videotape or a witness had provided affirmative evidence that appellant did
not, in fact, appear to be nervous when Trooper Lily encountered and questioned him, the
officer still had ample basis for his reasonable suspicion to detain appellant for the arrival of
the drug dog. The totality of the other facts listed above was legally sufficient to support
further detention. (33) Indeed, the facts of the two Florida "drug convoy" cars, the diversionary
tactics of the Jimmy, the overdue rental car, and the inconsistent stories about where appellant
had been, for how long, and why, provided sufficient reasonable suspicion to detain appellant
for the 25 minutes that it took for the drug dog to arrive. (34) Appellant's purported nervousness
is lagniappe-icing-on-the-cake-to the determination of reasonable suspicion. It is not crucial.

 We review the legal question of whether the totality of circumstances is sufficient to
support an officer's reasonable suspicion de novo. (35) Thus, it is a question of law, not of fact,
as to whether the evidence is sufficient to support a finding of reasonable suspicion even if
Trooper Lily did not reasonably believe that appellant was visibly nervous. (36)

 But to obtain a jury instruction under Article 38.23(a), the disputed fact must be one
that affects the determination of the legal issue. If Trooper Lily did not have reasonable
suspicion to detain appellant unless he acted nervously, then a dispute about that fact would
require a jury instruction. If, however, appellant's purported nervousness is not a fact that is
crucial to a legal finding of reasonable suspicion, then that disputed fact issue need not be
submitted to the jury. (37) 

 Of course, a trial judge might err on the side of caution and submit a jury instruction
even when the disputed fact does not appear to be outcome-determinative, because appellate
courts might disagree on the legal question of sufficient facts to support reasonable suspicion. 
But it would be absurd to say that a factual dispute about whether the defendant was wearing
green socks or red socks, or whether he was going 61 m.p.h. or 65 m.p.h. in a 55 m.p.h. zone,
requires a jury instruction. Neither of these disputed facts are material, much less crucial, to
the determination of the legal question. (38)

 In the present case, therefore, even if there had been affirmative evidence to raise a
disputed fact issue about whether Trooper Lily reasonably believed that appellant was or was
not nervous, the trial judge did not err in declining to submit any jury instruction on that
immaterial fact, much less the instruction on a legal conclusion that appellant requested.

 We therefore hold that appellant was not entitled to an Article 38.23(a) jury instruction
concerning whether Trooper Lily had reasonable suspicion to continue appellant's detention
because no evidence raised a disputed fact issue material to the admissibility of the challenged
evidence.

 We vacate the judgment of the court of appeals and remand the case to that court to
address appellant's remaining claims.

Delivered: December 19, 2007

Publish 
1. Madden v. State, 177 S.W.3d 322, 326 (Tex. App.-Houston [1st Dist.] 2005).
2. The State's ground for review is as follows:

 A panel of the court below erroneously reversed the trial court's judgment and
remanded the case for a new trial holding that the trial court improperly failed to submit
an instruction pursuant to Article 38.23(a) of the Code of Criminal Procedure requiring
the jury to determine whether there was reasonable suspicion for a continued detention
where the disputed factual issue the majority of the panel found, specifically related to
whether the defendant appeared to be nervous when questioned, from among the six
facts articulated by the detaining officer as reasons for the detention was not controlling
or out-come determinative and the remaining five undisputed facts independently
established reasonable suspicion for the continued detention as a matter of law, as
impliedly found by the trial court and found by the dissenting justice.
3. See Madden v. State, 177 S.W.3d 322, 328-32 (Tex. App.-Houston [1st Dist.] 2005)
(Keyes, J., dissenting).
4. Defense counsel's questioning included the following:

Q: So, if someone has shaking hands, in your opinion, and they're nervous, that's indicative of
them being in possession of drugs?

A: No, sir, not that alone.

Q: Would you agree with me that getting stopped by the police tends to make most people
nervous?

A: Yes, sir, but he was uncontrollably nervous.

Q: Somebody that's uncontrollably nervous would certainly be visible to the naked eyes, if it's
being videotaped; isn't that true?

A: It depends.

 [Defense Counsel]: May I direct the witness' attention to State's Exhibit 1 [the
videotape]?

 [The Court]: Yes.

 ...

 (Videotape played.)

Q: Okay. Now, is it your contention he is-his hands are shaking uncontrollably?

A: Yes, sir.

Q: And his face is twitching uncontrollably?

A: Yes, sir.

Q: Do you have any explanation why that's not apparent on the videotape?

A: I guess it's a dark tape. The State, they get low-budget tapes. Maybe that's why. I don't
know. I mean, you can't even see my face on this videotape, so- 

 (Videotape played.)

Q: Are you saying that his hands are shaking uncontrollably?

A: Yes, sir.

Q: During this stretch of the videotape, you got any explanation as to why we can't see it?

A: It's the same videotape that I just said. I don't know. That's the videotape the State gives us. 
We reuse the same videotape over and over again. Maybe it's losing its quality.

 (Videotape played.)

Q: So, his hands are shaking uncontrollably now, Officer; is that your testimony?

A: That's correct.

 (Videotape played.)

Q: You see his right hand by his blue jeans?

A: That's correct.

Q: Is it shaking uncontrollably? I can't tell right there. I can't tell with the videotape. You
indicated that he fumbled with his wallet, right?

A: That's right.

Q: Is that apparent on the videotape?

A: Yes.

 (Videotape played.)

A: Right there he can't get his driver's license out.

Q: Well, it took him, what, three seconds?

A: He was fumbling through his wallet, yes, sir.

Q: How long do you think in your recollection and having it refreshed by this videotape did it take
him to get his driver's license- 

A: It's his manner of going about getting it out.

 (Videotape played.)

Q: That's your-is that fumbling with the wallet? Is that your testimony?

A: Yes, sir.
5. That requested instruction read as follows:

 You are instructed that once a bona fide stop or arrest has been made for a
traffic offense, and the police officer, while questioning the motorist regarding the traffic
offense, acquires a reasonable suspicion to believe, and does believe, that the vehicle
contains narcotics possessed contrary to law, he may thereupon continue to detain the
vehicle until probable cause arises to search such vehicle.

 By the term "reasonable suspicion" as used herein is meant specific articulable
facts which, when taken together with rational inferences from those facts, would
warrant a man of reasonable caution to believe that an offense has been or is being
committed and the continued detention justified.

 Now, therefore, bearing in mind the foregoing instructions, if you find from the
evidence beyond a reasonable doubt that the vehicle driven by [appellant] was stopped
by a police officer in a bona fide stop or arrest for the traffic offense of speeding, and
that the officer, while questioning the driver of the said vehicle concerning the traffic
offense, acquired reasonable suspicion to believe and did believe that a narcotics
offense was being committed, whereupon he continued the detention of [appellant] and
the vehicle beyond the time necessary to effect the investigation for speeding, then you
may consider the evidence obtained by the search of the suspect vehicle.

 If you do not so find beyond a reasonable doubt, or if you have a reasonable
doubt thereof, then you will wholly disregard such evidence recovered in the search of
the vehicle, and not consider it as any evidence whatsoever.
6. Although the tape was admitted into evidence, it is not included in the appellate record before
us.
7. The trial judge's instruction read as follows:

 You are instructed that no evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in evidence
against the accused on the trial of any criminal case.

 You are further instructed that our law permits the stop and detention of a
motorist by a peace officer without a warrant when the officer has reasonable suspicion
to believe that a traffic offense has been committed.

 By the term "reasonable suspicion," as used herein, is meant specific articulable
facts which, when taken together with rational inferences from those facts, would
warrant a man of reasonable caution to believe that an offense has been or is being
committed. Speeding is an offense against the law.

 Therefore, bearing in mind these instructions, if you find from the evidence that,
on the occasion in question, Officer Lily did not have a reasonable suspicion to believe
that [appellant] was driving at a speed greater than 55 miles per hour on a portion of
the highway with a posted speed limit of 55 miles per hour immediately prior to the
stop, or if you have a reasonable doubt thereof, you will disregard any and all evidence
obtained as a result of [appellant's] detention by the officer and you will not consider
such evidence for any purpose whatsoever.

 However, if you find from the evidence that, on the occasion in question,
Officer Lily did have a reasonable suspicion to believe that [appellant] was driving at a
speed greater than 55 miles per hour on a portion of the highway with a posted speed
limit of 55 miles per hour immediately prior to the stop, then you may consider the
evidence obtained by the officer as a result of the detention.


This instruction is admirable in that it specifically directs the jury's attention to the one historical
fact-Officer Lily's reasonable belief or "suspicion" that appellant was going faster than 55 m.p.h.-in
dispute and tells the jury to decide this fact. The factual issue for the jury is not whether appellant was
speeding, the issue is whether Officer Lily had a reasonable belief that he was speeding. Even police
officers may be mistaken about an historical fact such as "speeding," as long as that mistake was not
unreasonable. Of course, evidence that appellant was not, in fact, speeding is highly probative of
whether Officer Lily was reasonable in thinking that he was speeding. The trial court's instructions
correctly set out the proper factual issue for the jury to decide. The rest of the instruction simply gives
the legal background for the issue and explains why this is such an important fact to decide.
8. Madden, 177 S.W.3d at 326.
9. Madden, 177 S.W.3d at 330 (Keyes, J., dissenting) (quoting Garza v. State, 126 S.W.3d
79, 86 (Tex. Crim. App. 2004)) (citation omitted).
10. Pierce v. State, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000) (jury instruction can operate
"only if there is a contested issue of fact about the obtaining of the evidence. . . . There is no issue for
the jury when the question is one of law only.").
11. Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982) (citations omitted).
12. 40 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure § 4.194
(2d ed. 2001); See Merriweather v. State, 501 S.W.2d 887, 891 (Tex. Crim. App. 1973) (when the
specific facts used by the court to determine the existence of probable cause were uncontested, the
defendant was not entitled to a jury instruction concerning other facts-which were contested-that did
not defeat the finding of probable cause).
13. Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (noting that "an Article 38.23
instruction must be included in the jury charge only if there is a factual dispute about how the evidence
was obtained").
14. See, e.g., id. at 87 (defense attorney's allusions on cross-examination and during closing
argument that officers violated the sheriff's department inventory-search guidelines and actually began
search to look for drugs did not raise a fact issue and "cannot be seen as any more than an opinion or
unsupported allegation"); Wesbrook v. State, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000) (noting
that "a trial court is required to include an Article 38.23 instruction in the jury charge only if there is a
factual dispute as to how the evidence was obtained. In the instant case, there was no dispute as to the
facts surrounding the acquisition of [witness's] testimony. The only determination to be made in this
case was of a legal nature, not factual.") (citation omitted); Bell v. State, 938 S.W.2d 35, 48 (Tex.
Crim. App. 1996) (per curiam).
15. See, e.g., Middleton v. State, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003) (jury
instruction on the disputed fact issue of whether defendant did or did not stop at stop sign was proper
under Article 38.23 because the existence of this single fact constituted probable cause to detain the
defendant and the non-existence of this fact meant that the officer did not have probable cause to detain
the defendant; "This case involved a single, and simple, factual dispute-whether or not [defendant]
stopped at the stop sign. Its resolution determined whether the seized evidence could be considered. 
There were no other facts which could have established probable cause."); Gerron v. State, 119
S.W.3d 371, 377 (Tex. App.-Waco 2003, no pet.) (defendant not entitled to Article 38.23(a) jury
instruction because State's evidence raised several alternative reasons for stopping him, only one of
which involved a disputed fact); Reynosa v. State, 996 S.W.2d 238, 240 (Tex. App.-Houston [1st
Dist.] 1999, no pet.) (although defendant testified that he did not run stop sign, no evidence
contradicted officer's testimony that defendant was speeding and failed to stay in single lane; no Article
38.23(a) instruction necessary); Markey v. State, 996 S.W.2d 226, 230-31 (Tex. App.-Houston
[14th Dist.] 1999, no pet.) (defendant not entitled to Article 38.23(a) jury instruction even though he
denied speeding because he did not contradict the other moving violation that the officer relied upon in
pulling him over).
16. Dix & Dawson, § 4.194, at 284 ("Jury submission, then, is only required when facts are
raised that are necessarily determinative of the admissibility of the challenged evidence.").
17. See Tex. Code Crim. Proc. Art. 36.13 ("Unless otherwise provided in this Code, the jury
is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed
thereby.").
18. That requested instruction is set out, supra, in note 5.
19. Appellant's attorney, when pressed by the trial judge, stated:


 The testimony of Officer Lily that he had a number of factors that he used as the basis
for his reasonable suspicion to call forth the drug dog to continue the detention, these
articulated factors we contend are [in] hot dispute in this case.

 For instance, the officer testifies that [appellant] fumbles with his wallet to
indicate his nervousness. We contend that both in cross-examination and in State's
Exhibit No. 1 [the patrol car recording], it is apparent to any reasonable person that
[appellant] does not fumble with his wallet, that [appellant] does so in a normal fashion.

 The officer articulated that his other basis for continued detention was that
[appellant] was extremely nervous, that his hands were shaking tremendously, that his
face was contorted and extremely nervous. State's Exhibit No. 1 and in cross-examination disputed- State's Exhibit No. 1 we contend refutes that and cross-examination raised that issue that he was not nervous, that his answers were normal,
that the officer says that he lied about his criminal record. We-on cross-examination
and he used that as one of his factors for continued detention, that he lied about his
criminal record, when in point of fact, on State's Exhibit 1, which is brought out in
cross-examination, the officer says: Have you been arrested?

 He said: Yes. I had a DUI.

 There's some question about whether dispatch said he had a larceny thing in
1996. On further cross-examination, the officer says he doesn't know whether that's
true or not; so, he doesn't know whether he lied or not.

20. See Garza v. State, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004) (stating, "That appellant
'disagrees with the conclusion that probable cause was shown as a matter of law' is not the same as
appellant controverting the facts. . . . The question of whether the search was legal is a question of law,
as none of the circumstances surrounding the search were controverted by appellant.").
21. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).
22. Dix & Dawson, § 4.194 at 282 ("The defendant must affirmatively introduce evidence that,
if credited, would justify a reasonable jury in concluding that there is a reasonable doubt as to a factual
matter essential to the admissibility of the evidence.") (footnote omitted); See, e.g., Garza, 126 S.W.3d
at 86-87 (stating that suggestions by defense counsel that officers were on "a fishing expedition" did not
"rise to the level of creating a fact issue" sufficient to require an Art. 38.23(a) jury instruction; "Mere
insinuations by appellant's attorney that no inventory slip was made, in light of the testimony by each
officer that such a slip did indeed exist, did not raise a fact issue as to the existence of the inventory
slip."); see Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (trial court erred in
submitting instruction on lesser-included offense of sexual assault because the failure to find or retrieve a
knife matching the description given by the complainant is not "affirmative evidence" that no knife was
used during the assault).
23. See, e.g., Garza, 126 S.W.3d at 86-87 & n.3 (defense cross-examination of police officers
who consistently denied defense suggestion of impropriety did not raise factual dispute); Wells v. State,
730 S.W.2d 782, 786 (Tex. App.-Dallas 1987) (noting that "remarks by counsel are not evidence"
and "[q]uestions put to a witness are not evidence. The answers and not the questions are
determinative").
24. See Garza, 126 S.W.3d at 86-87 & n.3.
25. See id.; see also Rose v. State, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971) ("No
witness was called by the appellant to controvert the testimony of the officers. The cross-examination
did not raise a fact issue on the right to arrest. Therefore, the court did not err in refusing the charge"
under Art. 38.23(a)); Trent v. State, 925 S.W.2d 130, 133 (Tex. App.-Waco 1996, no pet.) (cross-examination of officer did not raise factual dispute for purposes of Art. 38.23(a); rejecting defendant's
contention that, although "he did not present any controverting evidence on the legality of the arrest, . . .
he sufficiently attacked the credibility of [witness] to require an instruction.").
26. Dix & Dawson, § 4.194 at 282 (noting that "a fact issue is not generated by the possibility
that the jury may disbelieve all or some of [the State's] testimony"); see Pruneda v. State, 104
S.W.3d 302, 305-06 (Tex. App.-Texarkana 2003, pet. ref'd) (no jury instruction under Art. 38.23(a) 
required when officer's only reference to racial profiling in his testimony came from his denial under
cross-examination; defendant offered no affirmative evidence of racial profiling); Shpikula v. State, 68
S.W.3d 212, 217 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) (the jury's right to disbelieve
officers' testimony that they saw that defendant's tail light was out from a quarter mile away did not
create a factual dispute requiring a jury instruction under Art. 38.23(a)); Cerda v. State, 10 S.W.3d
748, 757 (Tex. App.-Corpus Christi 2000, no pet.) (impeachment of officer did not create a factual
dispute for purposes of Art. 38.23(a)); Victor v. State, 995 S.W.2d 216, 221 (Tex. App.-Houston
[14th Dist.] 1999, pet. ref'd) (defendant's "cross-examination of the officers did not raise a fact issue on
the right to arrest.").
27. See Jordan v. State, 562 S.W.2d 472, 473-74 (Tex. Crim. App. 1978) (when officer
testified that a specific person had told him defendant always carried a gun and that is why he patted
down defendant in bar, but that person testified and denied telling the officer that the defendant always
carried a gun, defendant was entitled to jury instruction under Art. 38.23(a)).
28. Madden, 177 S.W.3d at 326.
29. See Carmouche v. State, 10 S.W.3d 323, 328-29 (Tex. Crim. App. 2000) (reasonable
suspicion permits an officer to detain a person on less than probable cause to investigate possible
criminal behavior when the officer points to specific and articulable facts which, taken together with
rational inferences from those facts, reasonably warrant the detention).
30. Much of the pertinent cross-examination is quoted, supra, in note 4. Nowhere during that
colloquy does Officer Lily agree or admit that appellant was not nervous or that his hands were not
shaking or his face trembling. There is no affirmative evidence elicited during any of the cross-examination that appellant was not nervous, that his hands were not shaking, and that his face was not
trembling. See Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (the failure to find
or retrieve a knife matching the description by the complainant is not "affirmative evidence" that no knife
was used during the assault). We have only appellant's attorney's questions that assert such facts, but
he was not a witness, and his questions are not evidence.

 Although the court of appeals did not discuss it, the same is true of appellant's cross-examination of Officer Lily about appellant's prior criminal record. Officer Lily stated that he thought
appellant was lying because appellant said that he had previously been arrested for DUI, while the
dispatcher told Officer Lily that appellant had a 1996 arrest for larceny. There is ambiguity about
whether appellant, in fact, had one prior arrest for DUI, one prior arrest for larceny, or prior arrests for
both DUI and larceny. But there is no affirmative evidence that Officer Lily was incorrect that the
dispatcher told him appellant had a prior larceny arrest, or that Officer Lily was unreasonable in thinking
that appellant was lying after Officer Lily received the dispatcher's information. 
31. As Professors Dix and Dawson have noted, courts do not always focus on the precise factual
issue that should be submitted to the jury. The factual issue is not "Did appellant's face tremble and his
hands shake in nervousness?" It is, "Did Trooper Lily reasonably believe that appellant's face trembled
and his hands shook in nervousness?" See Dix & Dawson, § 4.198 at 90-91 (Supp. 2007). The trial
judge's instructions on the "speeding" factual dispute, quoted, supra, in note 7, correctly set out the
appropriate factual issue. 
32. Trooper Lily explained that he narrated into his "mike" because "I want the jury to see
exactly what I'm seeing." Appellant's attorney then said, "Well, the jury can see what's on the
videotape." Trooper Lily responded, "Not necessarily. Just like, for instance, with his hands shaking,
you can't see that because of the tape, the quality of the tape. So, I'm letting the jury know exactly
what I observed."
33. See, e.g., United States v. Arvizu, 534 U.S. 266, 277 (2002) (concluding that border-
patrol officer had reasonable suspicion for investigatory stop where (1) it was reasonable for
officer-based on his training, experience, and observations-to believe that defendant drove along a
little-used rural road frequently used by smugglers to avoid a border-patrol checkpoint; (2) the vehicle
had turned away from known recreational areas, decreasing the probability that defendant and his
family were on "a picnic"; (3) the children's raised knees suggested concealed cargo; and (4) the
children's mechanical waving "continued for a full four to five minutes").
34. See id.; see also Sims v. State, 98 S.W.3d 292, 296-97 (Tex. App.-Houston [1st Dist.]
2003, no pet.) (finding reasonable suspicion for detention when (1) officer saw a second car in front of
first traveling in an erratic manner in an apparent attempt to distract the officer from the first car; (2) car
contained a "'large amount' of air fresheners"; (3) driver was "extremely nervous"; (4) driver hesitated
when she spoke and seemed internally inconsistent in her explanation of where she had come from; (5)
when trooper asked her to step out from between the cars, she put her hands up as if thinking she were
being arrested; and (6) she was driving a rental van and could not produce the rental papers).
35. See Kothe v. State, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).
36. Jordan v. State, 562 S.W.2d 472, 473 (Tex. Crim. App. 1978) ("'It has been the uniform
holding in our decisions that whether probable cause exists for the search of an automobile was a
question primarily for the court, but if the existence of the facts claimed to constitute probable cause is
controverted, it then becomes an issue for the jury under appropriate instructions.'") (quoting Lee v.
State, 126 Tex. Crim. 18, 23, 70 S.W.2d 185, 187 (1934)).
37. See McNeal v. State, 112 Tex. Crim. 533, 536, 17 S.W.2d 1050, 1051 (1929) ("'[W]hat
facts and circumstances amount to probable cause is a question of law; whether they exist in any
particular case is a question of fact. Where the facts are in controversy the question must be submitted
to the jury under proper instructions.'") (quoting Cornelius on Search & Seizure, § 33, at 135). 
38. See Dix & Dawson, § 4.194 at 283 ("Jury submission is required only if the factual issue
raised by the defendant determines whether the jury may consider the evidence at issue. Thus if a
defendant fails to introduce evidence on one 'element' of the 'case' needed to establish that the jury
may not consider the evidence, jury submission is not required.") (citing Maldonado v. State, 998
S.W.2d 239, 247 (Tex. Crim. App. 1999)); see Reynosa v. State, 996 S.W.2d 238, 240 (Tex.
App.-Houston [1st Dist.] 1999, no pet.) (no instruction required when defendant disputed only one of
several stated bases for stop); Crunk v. State, 934 S.W.2d 788, 794-95 (Tex. App.-Houston [14th
Dist.] 1996, pet. ref'd) (Art. 38.23(a) instruction not required because jury's resolution of disputed fact
issue would not render evidence inadmissible; jury finding on the issue would be irrelevant).