

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-152-CR

JOHNNY GASCA                                                          APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Johnny Gasca appeals his conviction for felony repetition driving while intoxicated. In two points, he complains that alcohol content evidence was not properly authenticated and that the trial court failed to instruct the jury to disregard any evidence that it believed was illegally obtained. We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## Background

Fort Worth Police Officer Mark Macy testified that one night when he was on patrol, he turned his patrol car onto a residential street and saw oncoming headlights in his lane of traffic. He swerved to the right-hand curb line and let the other vehicle pass. When asked what traffic violations the vehicle's driver had committed, Officer Macy answered, "[D]riving on the wrong side of the road, failed to yield right-of-way, unsafe movement, [and] unsafe lane change or passing." He turned around, followed the car, and caught up to it as it entered a convenience store parking lot. Officer Macy activated his lights, pulled in behind the car, and called for backup after detecting a strong odor of alcohol and approaching the driver, who appeared very unsteady and disoriented with slurred speech and bloodshot eyes. He identified Appellant as the car's driver.

Officers Brian Farmer and Rudy Cantu responded to the call for backup. Officer Farmer testified that he conducted field sobriety tests, determined that Appellant was intoxicated, and arrested him.

Officer Cantu testified that he transported Appellant to the jail. At the jail, he read Appellant the statutory warnings. Appellant refused to give a breath specimen and offered to give a blood specimen instead. Officer Cantu drove Appellant to the hospital. At the hospital, Appellant signed a consent to

draw blood. Officer Cantu testified that he watched a nurse draw the blood and fill the vials from a DWI kit, which Officer Cantu then sealed in an envelope. He said Joseph Cooper, the nurse who drew the blood, signed the consent form on the appropriate line. Officer Cantu testified that he then secured the vials in a refrigerator in the police department's secure property room. The trial court admitted the DWI kit into evidence, and Officer Cantu identified his own handwriting and Cooper's initials on the vials' sealing stickers.

Cooper testified that when working in the "rapid assessment room" at John Peter Smith Hospital, he typically draws blood from four patients an hour. He identified his signature on the consent form and his signature on the blood vials' sealing stickers. He said that he had no recollection of the events of the night in question and that he could not identify Appellant, but he testified that his signature on the form meant that he drew Appellant's blood.

Elizabeth van Munchrath, a senior forensic scientist with the police department crime lab, testified that she tested Appellant's blood sample and found it to contain 0.24 grams of ethyl alcohol per 100 milliliters of whole blood. She testified that when she received the vials, they were sealed and showed no evidence of tampering and that the offense number on the vials matched the offense number on the offense report.

3

The parties stipulated in writing that before the charged DWI, Appellant had been twice convicted of DWI. The jury found him guilty, and the trial court assessed punishment at forty-five years' confinement. This appeal followed.

**Admission of blood evidence**

In his first issue, Appellant argues that the trial court abused its discretion by overruling his objection to the physical evidence of the blood test and the lab results because the State failed to establish a chain of custody for the blood evidence. Specifically, Appellant argues that Cooper's inability to recall drawing Appellant's blood on the night in question means there is no proof of the beginning of the chain of custody.

Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Proof of the beginning and end of the chain will support admission of the evidence barring any showing of tampering or alteration. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951 (1990). We review a trial court's evidentiary rulings for an abuse of discretion. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

4

Here, Officer Cantu testified that he watched Cooper draw Appellant's blood and that he sealed the blood vials. Cooper testified that although he did not remember Appellant or drawing his blood, his signature on the consent form meant that he did draw Appellant's blood, and he identified his signature on the vials' sealing stickers. There is no evidence of tampering. We hold that this evidence is sufficient to establish the beginning of the chain of custody.

Appellant cites *Brown v. State*, 240 S.W.2d 310 (Tex. Crim. App. 1951), and *Garner v. State*, 848 S.W.2d 799 (Tex. App.—Corpus Christi 1993, no pet.), in support of his argument. Those cases are distinguishable. In *Brown*, the court of criminal appeals held that the State failed to establish a chain of custody in a DWI case when the nurse who drew the defendant's blood did not testify and there was no evidence that the blood drawn by the nurse was the same blood a doctor later sent to a lab. 240 S.W.2d at 310–11. In this case, the nurse who drew the blood testified, and his signature and Officer Cantu's handwriting on the vial seals proved that the blood Cooper drew from Appellant was the blood tested by van Munchrath. In *Garner*, the Corpus Christi court held that the State had failed to establish a chain of custody when a syringe found on the defendant was not immediately placed in a container or tagged. 848 S.W.2d at 800. There is no evidence of such a lapse in this case. Officer

5

Cantu testified that he sealed and labeled the vials immediately after Cooper drew Appellant's blood.

We hold that the trial court did not abuse its discretion by admitting the blood evidence over Appellant's chain of custody objection, and we overrule his first point.

**Article 38.23 instruction**

In his second point, Appellant argues that the trial court erred by refusing his request to instruct the jury to disregard the blood evidence if it believed, or had a reasonable doubt, that the evidence was obtained illegally because other evidence raised a fact question about Officer Macy's stated basis for stopping Appellant, i.e., Appellant's violation of the transportation code by driving on the wrong side of the road.

Under article 38.23 of the code of criminal procedure, no evidence obtained in violation of the federal or state constitutions or laws may be admitted; and when the evidence raises an issue regarding a violation, the jury must be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, it must disregard the illegally obtained evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a

6

constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. A cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might. *Id.* (citing *Garza v. State*, 126 S.W.3d 79, 86–87 & n.3 (Tex. Crim. App. 2004) (holding defense cross-examination of police officers who consistently denied defense suggestion of impropriety did not raise factual dispute)); *Wells v. State*, 730 S.W.2d 782, 786 (Tex. App.—Dallas 1987) (noting that "remarks by counsel are not evidence" and "[q]uestions put to a witness are not evidence. The answers and not the questions are determinative"), *pet. ref'd*, 810 S.W.2d 179 (Tex. Crim. App. 1990).

Here, Appellant points to his cross-examination of Officer Macy as justifying an article 38.23(a) instruction. Officer Macy agreed that driving on the wrong side of the road is permissible under the transportation code when an obstruction on the roadway poses an immediate hazard and necessitates moving the vehicle left of the roadway's center and the operator yields the right-of-way to a vehicle moving in a proper direction on the unobstructed portion of the roadway. *See* TEX. TRANSP. CODE ANN. § 545.051 (Vernon 1999).

But when asked about other vehicles and potholes on the street—either of which might be an obstruction—Officer Macy testified that he did not recall. Appellant points to no other testimony as raising a conflict in the evidence regarding the basis for the stop.

Officer Macy's nonconfirmatory answers to Appellant's questions on cross-examination are insufficient to raise a disputed fact issue warranting an article 38.23(a) jury instruction. *See Madden*, 242 S.W.3d at 513. We therefore hold that the trial court did not err by refusing the instruction, and we overrule Appellant's second point.

## Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 29, 2008

8