**Affirmed and Opinion Filed June 15, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00439-CR

**THEODORE ROOSEVELT ARTHUR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1258513-J**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Bridges

Theodore Roosevelt Arthur appeals his conviction for possession of marijuana in an amount of fifty pounds or less but more than five pounds. A jury convicted appellant, and the trial court sentenced him to six years' confinement.[1] In five points of error, appellant argues the trial court erred in finding he gave consent to a search, refusing to suppress the contents of a "tin can," refusing to instruct the jury on a lesser-included offense, failing to instruct the jury to disregard the evidence if it found appellant did not consent to the search, and failing to instruct the jury to disregard evidence it found to be outside the scope of the consent to search. We affirm the trial court's judgment.

---

[1] The record contains the State's notice of extraneous offenses advising appellant that evidence of the following crimes, wrongs, or acts might be introduced at trial: assault of a public servant, possession of a controlled substance, two possession of a dangerous drug offenses, two deadly conduct offenses, assault causing bodily injury--family member, and two violation of a protective order offenses.

Dallas police officer Karen Eguia testified she was dispatched to a residence in Dallas on July 27, 2012 because an anonymous caller reported that the residents were "growing a marijuana tree in the backyard and the only way to see it would be through the alley." Eguia and her partner drove down the alley behind the residence and saw a marijuana plant growing more than six feet tall in the backyard. Eguia and her partner parked and got out of their patrol car. Eguia could smell the odor of marijuana, which she described as "like a skunk." Eguia called her sergeant, M. Irizarry, who arrived on the scene shortly thereafter and verified that it was marijuana growing in the house's backyard.

Eguia heard the house's garage door open, and she and the other officers drew their guns for officer safety because they did not know who was on the other side of the garage door. Eguia saw appellant and another person trying to get in the car that was parked in the garage. Appellant and his companion complied with commands to come out to the driveway and get down on their stomachs. Officers handcuffed them. Appellant's wife, Jessica Turner, opened the door leading inside the house from the garage. Irizarry asked Turner if there were other people inside the house, and Turner said "her children and her father" were inside the house. Irizarry asked Turner for her consent to conduct a protective sweep of the house, and Turner consented. While Eguia waited outside, Irizarry and another officer conducted a protective sweep of the house "to check for people and any danger." The protective sweep lasted "less than a minute." Inside the house were appellant's wife, Jessica Turner, two little girls and an older man. Also during the protective sweep, Irizarry "saw seeds" in plain view with a digital scale on a desk. Irizarry spoke with Turner, and Turner filled out and signed a form indicating her consent for officers to search the house. Appellant also signed a consent to search form.

Dallas narcotics Detective Lucio Cano arrived and searched the house. Cano found "multiple" marijuana plants behind the house. Inside, he found a "greenish tin cup" that he

–2–

opened and found a bag of marijuana seeds and a bag of "ready to smoke marijuana." Cano confiscated the contents of the tin cup, and he and other narcotics detectives uprooted and bagged the live marijuana plants in the backyard. Appellant was indicted on a charge of possession of marijuana in an amount of fifty pounds or less but more than five pounds.

At trial, appellant elected to represent himself pro se. The trial court appointed standby counsel. Appellant filed a pretrial motion to suppress. At the end of voir dire, appellant stated his motion to suppress "was because [of] two things: No consent and they opened up a container in my house that was closed. And they got pictures to prove it."

At the hearing on appellant's motion to suppress, the prosecutor characterized the issues as the consent to search and the small metal container found in appellant's house. Eguia, the State's only witness at the hearing, testified to the events surrounding the search of appellant's house and appellant's and Turner's signing of consent to search forms. The State also introduced a video recording of appellant and Turner signing the forms.

Appellant called Turner as a witness, and she testified she signed the consent form because she "felt threatened" and "they threatened to take my children away." Turner testified she requested a search warrant, and her consent "was not freely." Appellant testified his consent was "forced" and officers kicked him in the head and stepped on him while he was lying on the ground. Appellant testified one officer said, "if you sell drugs in this state, you will sell drugs for me." Appellant testified officers "literally stood on top of [appellant's] back to look over the fence to look at the so-called alleged bush." Appellant claimed he made statements at the time he signed the consent form that he "signed under duress" and he was "totally against this consent without a search warrant."

During cross-examination, the State played a video of appellant's interview at the police station with Detective Dinh. In the video, appellant stated he knew the marijuana plant was a

–3–

"weed" plant, but he dug it up and tried to kill it. Appellant told Dinh he did not consent to the search at first, but agreed to sign a consent form if Turner also agreed to consent. The prosecutor asked appellant whether he told Dinh about officers abusing him, and appellant testified he "told the detective [he] was assaulted and . . . excessive force was used." However, the video did not show appellant claiming he was abused. In response to questioning regarding this discrepancy, appellant testified he "told the officer before that."

In response to appellant's insistence that he told a different officer about the abuse, the State played a video of appellant speaking with another officer. The video did not support appellant's claim that he spoke about abuse. Appellant testified the version of the video he "left at home" showed "that officer clearly said, 'We went in your house. We didn't find anything.'"

Appellant stated he had "another thing" and requested a picture of "a gold can on top of a glass table with a top on it, closed." The picture of the closed container was produced, and appellant testified: "That's the container that was not found in my house because I don't use that. That container came up in my house. The narcotics team searched my house. Why didn't they find that? And it was in my house. And there's it with the top open here, Your Honor. It is closed." Appellant testified the container "was not in [his] house before the officers came."

At the conclusion of the hearing, the trial court announced that the motion to suppress was denied and orally found appellant's and Turner's consent was freely and voluntarily made, and the subsequent search of the house was constitutionally legal.

The next day, before trial resumed, the trial court clarified that it had disposed of all of appellant's motions and made the following statement:

> While I've got the floor on the consent issue, let me make these – dictate these preliminary findings of fact and conclusions. I'll make written ones if requested to do so. I so find, as I have, consent by Mr. Arthur and/or his wife to the search was freely and voluntarily given without coercion or threats. I base this on the – considering all the evidence in the motion to suppress hearing and reasonable deduction from that evidence. I resolve credibility issues in favor of the State's

–4–

witnesses, who testified that these consents were secured without coercion. I'm well aware of the defendant's own testimony and his wife's testimony that raised this issue. However, in considering testimony but also the video without sound of the consent procedure at the alleyway of the defendant's residence and also his interview which was recorded in I assume Dallas County Jail, City Hall, two different police officers where I do not see any evidence of his alleged abuse or coercion or threats or physical violation and there being no other evidence to that effect. So I weighed all that in making these determinations. So I did find consent was freely and voluntarily given, so the issue on these matters is preserved for any appeal. Mr. Arthur, in the event you're convicted and desire to appeal. I believe you've – issues have been properly preserved.

Appellant did not object to the trial court's findings and did not request additional findings.

Eguia, Irizarry, and Cano testified regarding the marijuana in appellant's back yard and the subsequent search pursuant to the consent of appellant and Turner leading to the discovery of marijuana inside the house. Turner testified she asked for a search warrant, but "no one ever responded." Turner testified she signed the consent form because she "felt threatened." In his closing statement, appellant argued he tried to destroy the marijuana plant and did not know what it was. The jury convicted appellant, and this appeal followed.

In his first and second points of error, appellant argues the trial court erred in denying his motion to suppress. Specifically, appellant complains the trial court could not have found that Turner consented to the "protective sweep" of the house as Irizarry testified. Because it would be an abuse of discretion to conclude Turner consented to the protective sweep, appellant argues, the resulting discovery of marijuana seeds and scales were fruit of the poisonous tree. Further, appellant complains of the opening of the container in which marijuana was found.

Appellant did not raise the issue of consent to the protective sweep at trial. Further, though appellant mentioned the container being "closed," his arguments concerning the container all centered on his theory that police put the container in his house, and the container was not in his house before police came. Appellant's points of error on appeal do not comport with his objections and arguments at trial. Thus, no error is preserved for our review. *See* TEX. R. APP. P.

–5–

33.1(a)(1); *Cantu v. State*, 830 S.W.2d 166, 170 (Tex. App.—Dallas 1992, no pet.). We overrule appellant's first and second points of error.

In his third point of error, appellant argues the trial court erred in failing to instruct the jury on lesser-included possession offenses. Appellant did not object to the court's charge on the basis that it lacked a lesser-included offense instruction, and he did not request such an instruction. We conclude this issue is also waived. *See* TEX. R. APP. P. 33.1(a)(1); *Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010). We overrule appellant's third point of error.

In his fourth point of error, appellant argues the trial court erred in failing to instruct the jury, pursuant to article 38.23 of the code of criminal procedure, to disregard the evidence if it found appellant refused to consent to the search.

The court's charge instructed the jury to disregard the evidence if it failed to find beyond a reasonable doubt that Turner consented to the search. At the charge conference, appellant objected to this instruction and stated the instruction "should be Ms. Turner and Mr. Arthur and instead of Ms. Turner." The trial court responded that there had been no evidence raised before the jury regarding appellant's consent or lack of consent. The trial judge noted that "We heard extensively in front of the Court" but the issue was not raised in front of the jury. To raise a disputed fact issue warranting an article 38.23 jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). Because there was no such evidence putting the existence of appellant's consent into question, the trial court did not err in leaving appellant's name out of the article 38.23 instruction. *See id.* We overrule appellant's fourth point of error.

In his fifth point of error, appellant complains the trial court erred in failing to instruct the jury to disregard evidence it found to be outside the scope of the consent to search. Appellant

did not request an instruction regarding the scope of the consent. Accordingly, this issue presents nothing for our review. *See* TEX. R. APP. P. 33.1(a)(1). We overrule appellant's fifth point of error.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47.2(b)                                    /David L. Bridges/
                                                            DAVID L. BRIDGES
140439F.U05                                                 JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THEODORE ROOSEVELT ARTHUR,
Appellant

No. 05-14-00439-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1258513-J.
Opinion delivered by Justice Bridges.
Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 15, 2015.