

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-261-CR

CARRY LAMONT TUCKER                              APPELLANT

### V.

THE STATE OF TEXAS                                    STATE

------------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Carry Lamont Tucker, a pro se appellant, raises six points challenging his conviction for aggravated robbery. In five points, Tucker argues that his trial counsel was ineffective, and in his remaining point, Tucker contends that the trial court erred by denying his requested article 38.23 jury instruction. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Robert Bauer, assistant manager of a Braum's store in Fort Worth, was getting in his car after closing the store one night when a man with a gun approached him in the parking lot. The man held the gun to Bauer and threatened to kill him if he did not go back inside the store. Inside the store, the man forced Bauer to open two safes in the back room and put the money from the safes in a Braum's bag. The man then directed Bauer to the front of the store, where they saw a police officer in the parking lot. The man ran to the back of the store, yelling for Bauer to come with him, but Bauer ran out the front door toward the officer.

The officer—Officer Seals—had stopped at the store because he saw Bauer's car with its drivers side door open in the parking lot. Bauer told Officer Seals that the robber was a black male, around 5'10" and 180 pounds, wearing a blue basketball jersey, a black hooded sweatshirt, black pants, and a blue bandana. Officer Buchanan arrived on the scene, and Officer Seals gave him a brief description of the robber. Officer Buchanan also talked to Bauer, who reiterated the description of the robber. The first call that went out to the other officers described the robber has a black male, 5'10" and 180 pounds, wearing a basketball jersey. A second call went out minutes later that the robber was

also wearing a black "hoodie," and a third call added that the jersey was light blue and that the robber wore a blue and white bandana over his face.

Officer Brooks heard the call and drove to a nearby apartment complex to look for the robber. He noticed a maintenance shed was partially opened and found a black hooded sweatshirt, a black baseball cap, a Braum's bag containing cash and checks, and a pistol inside.

Officer Buchanan left Braum's, joined the search at the apartment complex, and viewed the items in the shed. The officer saw Tucker walking in a breeze way in the complex and observed that he was "about the same height and weight given" and wearing a blue basketball jersey and black pants. The officer informed Tucker that he matched the description of a robbery suspect and detained him until Bauer arrived at the complex. Bauer recognized Tucker's blue basketball jersey, black pants, Nike shoes, height, weight, and voice.

At trial, a forensic analyst testified that a DNA sample from the cuff of the black sweatshirt contained a mixture of DNA from two or three individuals, including Tucker. The analyst testified that she could exclude 99.9999% of the population as contributors of the DNA but that Tucker could not be excluded. The jury convicted Tucker of aggravated robbery, and after he pleaded true to two felony enhancements alleged in the indictment, the trial court sentenced him to life in prison. This appeal followed.

3

### III. ARTICLE 38.23 Instruction

In his fifth point, Tucker argues that the trial court erred by denying his requested jury instruction on reasonable suspicion pursuant to article 38.23 of the code of criminal procedure.[2] That instruction would have instructed the jury to disregard evidence obtained from Tucker's detainment unless it found "beyond a reasonable doubt that Officer Buchanan had reasonable suspicion, based on articulable facts to temporarily detain the Defendant for the offense of aggravated robbery; to wit:  that the Defendant fit the description of the robber, as Officer Buchanan believed that description to be at the point in time that he detained the Defendant."

At the suppression hearing and at trial, Tucker's trial counsel played an audiotape recording of the police radio broadcasts from the night of the robbery.  At one point in the recording, an unidentified officer says, "This isn't him."  Officer Buchanan testified at the suppression hearing and at trial that the voice was Sergeant O'Neil's and that, after Tucker was arrested, Officer Buchanan learned that Sergeant O'Neil had stopped Tucker and let him go sometime before Officer Buchanan stopped him.  At trial—presumably based on Officer Buchanan's testimony—Tucker's trial counsel called Sergeant O'Neil to

---

[2] *See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).

testify for the defense. He testified that he was searching the apartment complex for someone matching the radio description. He saw Tucker in the complex and stopped and asked him some questions but let him go because he was "calm, cool, and collected." Sergeant O'Neil testified, "Well, I had plenty of probable cause to detain him. I made a momentarily poor decision in judgment there based off a predisposed hunch that we were looking for somebody that was running or hiding in or near the area." Sergeant O'Neil testified that he was not the one who said "[t]his isn't him" on the audiotape, but he recognized the voice as belonging to Corporal Alldredge. Corporal Alldredge did not testify at trial.

In support of an article 38.23 jury instruction, Tucker's trial counsel argued that because two other officers—Sergeant O'Neil and Corporal Alldredge—knew the description of the robber and determined that Tucker did not fit the description, a question of fact existed as to whether Officer Buchanan had reasonable suspicion.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. *Id.* If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

5

Under article 38.23 of the code of criminal procedure, no evidence obtained in violation of the federal or state constitutions or laws may be admitted in evidence against the accused. Tex. Code Crim. Proc. Ann. art. 38.23(a). When the evidence raises an issue regarding a violation, the jury must be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, it must disregard the illegally obtained evidence. *Id.* A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone as a question of law. *Id.* at 510.

Contrary to Tucker's assertions, Sergeant O'Neil's testimony and Corporal Alldredge's statement on the audiotape do not raise fact issues disputing Officer Buchanan's authority to detain Tucker. *See id.* Sergeant O'Neil testified that he had "plenty of probable cause" to detain Tucker but that he did not do so because Tucker's behavior—rather than his appearance—did not fit

O'Neil's preconceived notion of the suspect. Regarding the audio recording, the record does not show to whom Corporal Alldredge was referring when he said, "This isn't him." Even assuming that Corporal Alldredge was talking about Tucker, his statement does not controvert the facts supporting Officer Buchanan's detention of Tucker.

The uncontroverted record evidence demonstrates that (1) the victim told Officer Buchanan that the suspect was a black man, approximately 5'10", of average weight, and wearing a black hoodie, a blue basketball jersey, and black pants and that he had a pistol; (2) Officer Buchanan heard the police radio broadcast that someone saw a man who matched the suspect's description running into a nearby apartment complex; (3) Officer Buchanan viewed the items found in the shed at the apartment complex, including a black hoodie and a gun; and (4) he saw "a black male about the same height and weight given with a blue basketball jersey and black pants" about 100 feet from the shed where the items were found. The evidence in the record does not dispute or question the evidence upon which Officer Buchanan relied to detain Tucker; that Tucker disagrees with the conclusion that reasonable suspicion was shown as a matter of law is not the same as Tucker controverting the facts. *See Garza v. State*, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004). Thus, because there was no evidence of a disputed fact warranting an article 38.23(a) jury

7

instruction, we hold that the trial court did not err by denying Tucker's requested instruction. *See id.* at 513; *Cate v. State*, 124 S.W.3d 922, 928 (Tex. App.—Amarillo 2004, pet. ref'd). We overrule Tucker's fifth point.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first, second, third, fourth, and sixth points, Tucker contends that he was denied his right to effective assistance of counsel. Specifically, Tucker contends that his trial counsel (1) failed to conduct an adequate pretrial investigation of the case; (2) failed to call an available witness at trial to contradict the State's evidence; (3) failed to file a motion for production of witness statements pursuant to rule of evidence 615; and (4) failed to adequately investigate prior void convictions and apply the correct law to those prior convictions at the punishment phase of trial.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001);

8

*Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based

9

upon unclear portions of the record.  *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  *Id.* at 697, 104 S. Ct. at 2070.

## B.  Counsel's Investigation of the Case

Tucker first argues that his trial counsel was ineffective because he failed to adequately investigate and apply pertinent facts of the case to Tucker's motion to suppress evidence.  He claims that a proper investigation of the facts would have shown that he did not fit the description of the robber.  Tucker does not explain how any additional investigation would have shown that he failed to match the description of the suspect.

In a separate point, Tucker also argues that his trial counsel was ineffective because he failed to conduct a pretrial investigation of facts to

10

support a jury instruction on reasonable suspicion pursuant to article 38.23. Specifically, he claims that trial counsel failed to properly identify the person on the audiotape of the police radio broadcast who said, "This isn't him."

The record demonstrates that Tucker's trial counsel thoroughly explored the issue of whether Tucker matched the description of the suspect and whether Officer Buchanan had reasonable suspicion to detain him. He cross-examined Bauer and the officers who testified for the State about the specific description of the suspect, and he called Sergeant O'Neil to testify for the defense that he stopped Tucker but determined that he was not the suspect. Tucker's trial counsel also introduced into evidence the audio recording of the police description of the suspect and of an officer saying, "This isn't him." Tucker seems to argue that had his trial counsel identified Corporal Alldredge as the speaker on the audio recording before trial, he could have called the corporal to testify at trial, but Tucker fails to show how he would have benefitted from the corporal's testimony.[3] *See Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987) (holding

---

[3] Even if Corporal Alldredge would have testified that he also stopped Tucker and determined that he did not fit the description of the suspect, we have already explained in section III above how this testimony would not create a fact issue regarding Officer Buchanan's basis for reasonable suspicion to detain Tucker.

that absent a showing that a potential witness would have benefitted the defense, counsel's failure to call the witness is of no moment).  Tucker fails to overcome the presumption of reasonable professional assistance.  *See Thompson*, 9 S.W.3d at 814.

### C.  Failure to Call Available Witnesses

Tucker also argues that trial counsel was ineffective because he failed to call Officer Seals—the first officer to arrive at Braum's the night of the robbery—to testify at trial.  Tucker contends that Officer Seals would have contradicted the State's evidence but fails to show what Officer Seals's testimony would have been or that Tucker would have benefitted from his testimony.[4]   Again, without this showing, Tucker fails to overcome the presumption that his trial counsel provided reasonable professional assistance. *See Simms v. State*, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1993, pet. re'd) (citing *Wilkerson*, 726 S.W.2d at 551).

### D.  Motion for Production of Witness Statements

---

[4] The police call sheet admitted at trial contains the description of the robber as broadcasted by Officer Seals over the police radio.  Tucker argues that because the call sheet does not include "black pants" in the description of the robber, Officer Seals would have controverted Officer Buchanan's testimony that the robber was described as wearing black pants.  But Officer Buchanan testified that the victim himself told him that the robber wore black pants.

12

Tucker further contends that he received ineffective assistance at trial because his trial counsel failed to file a motion for production of Bauer's written statement to police. Texas Rule of Evidence 615(a) requires that after a witness has testified on direct examination, a trial court, on motion of a party who did not call the witness, shall order the production of the witness's written statement relating to the matter testified. Tex. R. Evid. 615(a). The record shows that Bauer went to the police station after the robbery and spoke with a detective, but there is no evidence that he provided a written statement. Additionally, the record is silent as to why trial counsel did not request any written statements. Therefore, Tucker fails to rebut the presumption that this decision was reasonable. *See Thompson*, 9 S.W.3d at 814.

## E.  Admission of Prior Convictions During Punishment

Tucker finally argues that trial counsel was inadequate because he failed to adequately investigate Tucker's prior void convictions and apply the correct law to those prior convictions at the punishment phase of trial. Specifically, Tucker argues that his prior conviction for assault on a correctional officer should not have been used for enhancement purposes because his sentence for

13

that conviction did not begin to run until after his sentence for a prior aggravated robbery conviction ceased to operate.[5]

Nothing in the record supports Tucker's contention. His indictment included a habitual offender notice based on two prior convictions—one in December 1999 for assault on a correctional officer and one in November 1994 for an aggravated robbery. The State introduced a pen packet containing the judgment and sentence for the prior offenses. This information was sufficient to satisfy section 12.42(d) of the penal code. *See* Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2008) (providing for enhanced punishment upon showing that defendant was finally convicted of two felony offenses and that the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final); *Langston v. State*, 776 S.W.2d 586, 587 (Tex. Crim. App. 1989) (holding copies of judgment and sentence was proof of prior conviction). The finality of the convictions does not hinge on whether the sentence for the second previous felony conviction ran consecutively or concurrently with the first previous

---

[5] Tucker also complains of a third prior conviction contained in the pen packet introduced at trial, but the State did not rely on this conviction to enhance Tucker's range of punishment. Thus, Tucker's argument that this conviction should not have been used for enhancement purposes is without merit.

14

felony conviction. The record demonstrates that the prior convictions were properly considered for enhancement purposes.

Having disposed of each of Tucker's ineffective assistance arguments, we hold that he failed to overcome the strong presumption that his trial counsel rendered adequate assistance and overrule his first, second, third, fourth, and sixth points. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

## V. CONCLUSION

Having overruled Tucker's six points, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 13, 2008