COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-261-CR

 

 

CARRY
LAMONT TUCKER                                                     APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

             FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

                                                                                                           

                                  MEMORANDUM
OPINION[1]

                                                  ------------

                                             I.  INTRODUCTION

Appellant Carry Lamont Tucker, a pro se
appellant, raises six points challenging his conviction for aggravated
robbery.  In five points, Tucker argues
that his trial counsel was ineffective, and in his remaining point, Tucker
contends that the trial court erred by denying his requested article 38.23 jury
instruction.  We will affirm.








II.  Factual
And Procedural Background

Robert Bauer, assistant manager of a Braum=s store
in Fort Worth, was getting in his car after closing the store one night when a
man with a gun approached him in the parking lot.  The man held the gun to Bauer and threatened
to kill him if he did not go back inside the store.  Inside the store, the man forced Bauer to
open two safes in the back room and put the money from the safes in a Braum=s
bag.  The man then directed Bauer to the
front of the store, where they saw a police officer in the parking lot.  The man ran to the back of the store, yelling
for Bauer to come with him, but Bauer ran out the front door toward the
officer.








The officerCOfficer
SealsChad
stopped at the store because he saw Bauer=s car
with its drivers side door open in the parking lot.  Bauer told Officer Seals that the robber was
a black male, around 5'10" and 180 pounds, wearing a blue basketball
jersey, a black hooded sweatshirt, black pants, and a blue bandana.  Officer Buchanan arrived on the scene, and
Officer Seals gave him a brief description of the robber.  Officer Buchanan also talked to Bauer, who
reiterated the description of the robber. 
The first call that went out to the other officers described the robber
has a black male, 5'10" and 180 pounds, wearing a basketball jersey.  A second call went out minutes later that the
robber was also wearing a black Ahoodie,@ and a
third call added that the jersey was light blue and that the robber wore a blue
and white bandana over his face.

Officer Brooks heard the call and drove to a
nearby apartment complex to look for the robber.  He noticed a maintenance shed was partially
opened and found a black hooded sweatshirt, a black baseball cap, a Braum=s bag
containing cash and checks, and a pistol inside.

Officer Buchanan left Braum=s,
joined the search at the apartment complex, and viewed the items in the
shed.  The officer saw Tucker walking in
a breeze way in the complex and observed that he was Aabout
the same height and weight given@ and
wearing a blue basketball jersey and black pants.  The officer informed Tucker that he matched
the description of a robbery suspect and detained him until Bauer arrived at
the complex.  Bauer recognized Tucker=s blue
basketball jersey, black pants, Nike shoes, height, weight, and voice.

At trial, a forensic analyst testified that a DNA
sample from the cuff of the black sweatshirt contained a mixture of DNA from
two or three individuals, including Tucker. 
The analyst testified that she could exclude 99.9999% of the population
as contributors of the DNA but that Tucker could not be excluded.  The jury convicted Tucker of aggravated
robbery, and after he pleaded true to two felony enhancements alleged in the
indictment, the trial court sentenced him to life in prison.  This appeal followed.








III.  ARTICLE 38.23
Instruction

In his fifth point, Tucker argues that the trial
court erred by denying his requested jury instruction on reasonable suspicion
pursuant to article 38.23 of the code of criminal procedure.[2]  That instruction would have instructed the
jury to disregard evidence obtained from Tucker=s
detainment unless it found Abeyond a
reasonable doubt that Officer Buchanan had reasonable suspicion, based on
articulable facts to temporarily detain the Defendant for the offense of
aggravated robbery; to wit:  that the
Defendant fit the description of the robber, as Officer Buchanan believed that description
to be at the point in time that he detained the Defendant.@








At the suppression hearing and at trial, Tucker=s trial
counsel played an audiotape recording of the police radio broadcasts from the
night of the robbery.  At one point in
the recording, an unidentified officer says, AThis isn=t him.@  Officer Buchanan testified at the suppression
hearing and at trial that the voice was Sergeant O=Neil=s and
that, after Tucker was arrested, Officer Buchanan learned that Sergeant O=Neil had
stopped Tucker and let him go sometime before Officer Buchanan stopped
him.  At trialCpresumably
based on Officer Buchanan=s testimonyCTucker=s trial
counsel called Sergeant O=Neil to testify for the
defense.  He testified that he was
searching the apartment complex for someone matching the radio
description.  He saw Tucker in the
complex and stopped and asked him some questions but let him go because he was Acalm,
cool, and collected.@ 
Sergeant O=Neil testified, AWell, I
had plenty of probable cause to detain him. 
I made a momentarily poor decision in judgment there based off a
predisposed hunch that we were looking for somebody that was running or hiding
in or near the area.@ 
Sergeant O=Neil testified that he was not
the one who said A[t]his isn=t him@ on the
audiotape, but he recognized the voice as belonging to Corporal Alldredge.  Corporal Alldredge did not testify at trial.

In support of an article 38.23 jury instruction,
Tucker=s trial
counsel argued that because two other officersCSergeant
O=Neil and
Corporal AlldredgeCknew the description of the
robber and determined that Tucker did not fit the description, a question of
fact existed as to whether Officer Buchanan had reasonable suspicion.

Appellate review of error in a jury charge
involves a two-step process.  Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  Id.  If so, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Id. at 731B32.








Under article 38.23 of the code of criminal
procedure, no evidence obtained in violation of the federal or state
constitutions or laws may be admitted in evidence against the accused.  Tex. Code Crim. Proc. Ann. art.
38.23(a).  When the evidence raises an
issue regarding a violation, the jury must be instructed that if it believes,
or has a reasonable doubt, that the evidence was obtained in violation of the
law, it must disregard the illegally obtained evidence.  Id. 
A defendant=s right to the submission of
jury instructions under article 38.23(a) is limited to disputed issues of fact
that are material to his claim of a constitutional or statutory violation that
would render evidence inadmissible.  Madden
v. State, 242 S.W.3d 504, 509B10 (Tex.
Crim. App. 2007).  To raise a disputed
fact issue warranting an article 38.23(a) jury instruction, there must be some
affirmative evidence that puts the existence of that fact into question.  Id. at 513.  If there is no disputed factual issue, the
legality of the conduct is determined by the trial judge alone as a question of
law.  Id. at 510.








Contrary to Tucker=s assertions,
Sergeant O=Neil=s
testimony and Corporal Alldredge=s
statement on the audiotape do not raise fact issues disputing Officer Buchanan=s
authority to detain Tucker.  See id.  Sergeant O=Neil
testified that he had Aplenty of probable cause@ to
detain Tucker but that he did not do so because Tucker=s
behaviorCrather
than his appearanceCdid not fit O=Neil=s
preconceived notion of the suspect. 
Regarding the audio recording, the record does not show to whom Corporal
Alldredge was referring when he said, AThis isn=t him.@  Even assuming that Corporal Alldredge was
talking about Tucker, his statement does not controvert the facts supporting
Officer Buchanan=s detention of Tucker.








The uncontroverted record evidence demonstrates
that (1) the victim told Officer Buchanan that the suspect was a black man,
approximately 5'10", of average weight, and wearing a black hoodie, a blue
basketball jersey, and black pants and that he had a pistol; (2) Officer
Buchanan heard the police radio broadcast that someone saw a man who matched
the suspect=s description running into a
nearby apartment complex; (3) Officer Buchanan viewed the items found in the
shed at the apartment complex, including a black hoodie and a gun; and (4) he
saw Aa black
male about the same height and weight given with a blue basketball jersey and
black pants@ about 100 feet from the shed
where the items were found.  The evidence
in the record does not dispute or question the evidence upon which Officer
Buchanan relied to detain Tucker; that Tucker disagrees with the conclusion
that reasonable suspicion was shown as a matter of law is not the same as
Tucker controverting the facts.  See
Garza v. State, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004).  Thus, because there was no evidence of a
disputed fact warranting an article 38.23(a) jury instruction, we hold that the
trial court did not err by denying Tucker=s
requested instruction.  See id. at
513; Cate v. State, 124 S.W.3d 922, 928 (Tex. App.CAmarillo
2004, pet. ref=d).  We overrule Tucker=s fifth
point.

IV.  INEFFECTIVE ASSISTANCE
OF COUNSEL

In his first, second, third, fourth, and sixth
points, Tucker contends that he was denied his right to effective assistance of
counsel.  Specifically, Tucker contends
that his trial counsel (1) failed to conduct an adequate pretrial investigation
of the case; (2) failed to call an available witness at trial to contradict the
State=s
evidence; (3) failed to file a motion for production of witness statements
pursuant to rule of evidence 615; and (4) failed to adequately investigate
prior void convictions and apply the correct law to those prior convictions at
the punishment phase of trial.

A.  Standard of Review








To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim.
App. 1999); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

B.  Counsel=s
Investigation of the Case

Tucker first argues that his
trial counsel was ineffective because he failed to adequately investigate and
apply pertinent facts of the case to Tucker=s motion
to suppress evidence.  He claims that a
proper investigation of the facts would have shown that he did not fit the
description of the robber.  Tucker does
not explain how any additional investigation would have shown that he failed to
match the description of the suspect.








In a separate point, Tucker also argues that his
trial counsel was ineffective because he failed to conduct a pretrial
investigation of facts to support a jury instruction on reasonable suspicion
pursuant to article 38.23.  Specifically,
he claims that trial counsel failed to properly identify the person on the
audiotape of the police radio broadcast who said, AThis isn=t him.@








The record demonstrates that Tucker=s trial
counsel thoroughly explored the issue of whether Tucker matched the description
of the suspect and whether Officer Buchanan had reasonable suspicion to detain
him.  He cross-examined Bauer and the
officers who testified for the State about the specific description of the
suspect, and he called Sergeant O=Neil to
testify for the defense that he stopped Tucker but determined that he was not
the suspect.  Tucker=s trial
counsel also introduced into evidence the audio recording of the police
description of the suspect and of an officer saying, AThis isn=t him.@  Tucker seems to argue that had his trial
counsel identified Corporal Alldredge as the speaker on the audio recording
before trial, he could have called the corporal to testify at trial, but Tucker
fails to show how he would have benefitted from the corporal=s
testimony.[3]  See Wilkerson v. State, 726 S.W.2d
542, 551 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940 (1987)
(holding that absent a showing that a potential witness would have benefitted
the defense, counsel=s failure to call the witness is
of no moment).  Tucker fails to overcome
the presumption of reasonable professional assistance.  See Thompson, 9 S.W.3d at 814.

C.  Failure
to Call Available Witnesses

Tucker also argues that trial counsel was
ineffective because he failed to call Officer SealsCthe
first officer to arrive at Braum=s the
night of the robberyCto testify at trial.  Tucker contends that Officer Seals would have
contradicted the State=s evidence but fails to show
what Officer Seals=s testimony would have been or
that Tucker would have benefitted from his testimony.[4]  Again, without this showing, Tucker fails to
overcome the presumption that his trial counsel provided reasonable
professional assistance.  See Simms v.
State, 848 S.W.2d 754, 758 (Tex. App.CHouston
[1st Dist.] 1993, pet. re=d) (citing Wilkerson, 726
S.W.2d at 551).

D.  Motion
for Production of Witness Statements








Tucker further contends that he received
ineffective assistance at trial because his trial counsel failed to file a
motion for production of Bauer=s
written statement to police.  Texas Rule
of Evidence 615(a) requires that after a witness has testified on direct
examination, a trial court, on motion of a party who did not call the witness,
shall order the production of the witness=s
written statement relating to the matter testified.  Tex. R. Evid. 615(a).  The record shows that Bauer went to the police
station after the robbery and spoke with a detective, but there is no evidence
that he provided a written statement. 
Additionally, the record is silent as to why trial counsel did not
request any written statements. 
Therefore, Tucker fails to rebut the presumption that this decision was
reasonable.  See Thompson, 9
S.W.3d at 814.

E. 
Admission of Prior Convictions During Punishment








Tucker finally argues that trial counsel was
inadequate because he failed to adequately investigate Tucker=s prior
void convictions and apply the correct law to those prior convictions at the
punishment phase of trial.  Specifically,
Tucker argues that his prior conviction for assault on a correctional officer
should not have been used for enhancement purposes because his sentence for
that conviction did not begin to run until after his sentence for a prior
aggravated robbery conviction ceased to operate.[5]








Nothing in the record supports Tucker=s
contention.  His indictment included a
habitual offender notice based on two prior convictionsCone in
December 1999 for assault on a correctional officer and one in November 1994
for an aggravated robbery.  The State
introduced a pen packet containing the judgment and sentence for the prior
offenses.  This information was sufficient
to satisfy section 12.42(d) of the penal code. 
See Tex. Penal Code Ann. ' 12.42(d)
(Vernon Supp. 2008) (providing for enhanced punishment upon showing that
defendant was finally convicted of two felony offenses and that the second
previous felony conviction was for an offense that occurred subsequent to the
first previous conviction having become final); Langston v. State, 776
S.W.2d 586, 587 (Tex. Crim. App. 1989) (holding copies of judgment and sentence
was proof of prior conviction).  The
finality of the convictions does not hinge on whether the sentence for the
second previous felony conviction ran consecutively or concurrently with the
first previous felony conviction.  The
record demonstrates that the prior convictions were properly considered for
enhancement purposes.

Having disposed of each of Tucker=s
ineffective assistance arguments, we hold that he failed to overcome the strong
presumption that his trial counsel rendered adequate assistance and overrule
his first, second, third, fourth, and sixth points.  See Strickland, 466 U.S. at 690, 104
S. Ct. at 2066.

V.  CONCLUSION

Having overruled Tucker=s six
points, we affirm the trial court=s
judgment.

PER CURIAM

PANEL: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: November 13, 2008











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005).





[3]Even if Corporal
Alldredge would have testified that he also stopped Tucker and determined that
he did not fit the description of the suspect, we have already explained in
section III above how this testimony would not create a fact issue regarding
Officer Buchanan=s basis for reasonable
suspicion to detain Tucker.





[4]The police call sheet
admitted at trial contains the description of the robber as broadcasted by
Officer Seals over the police radio. 
Tucker argues that because the call sheet does not include Ablack pants@ in the description of
the robber, Officer Seals would have controverted Officer Buchanan=s testimony that the
robber was described as wearing black pants. 
But Officer Buchanan testified that the victim himself told him that the
robber wore black pants.





[5]Tucker also complains of
a third prior conviction contained in the pen packet introduced at trial, but
the State did not rely on this conviction to enhance Tucker=s range of
punishment.  Thus, Tucker=s argument that this
conviction should not have been used for enhancement purposes is without merit.