

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00289-CR

Vincent Dale **ROSS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B12276
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 25, 2014

AFFIRMED

Vincent Ross represented himself in his jury trial for unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04 (West 2011). He was convicted, sentenced to a ten-year term of imprisonment, and assessed a fine of $8,000.00. Ross appeals, contending that the trial court erred by not permitting him to fully cross-examine a State's witness in order to relitigate the legality of the search that resulted in the discovery of evidence against him. Because we conclude that Ross failed to preserve error and that any error was harmless beyond a reasonable doubt, we affirm the trial court's judgment.

**BACKGROUND**

*Motion to Suppress*

Ross was arrested following a search of his bedroom where at least one firearm was discovered, a .357 Magnum Ruger Blackhawk pistol. Immediately before Ross's trial, the trial court held a suppression hearing to determine whether the police legally found and seized the firearm from Ross's bedroom. At the suppression hearing, the State put on two witnesses, and Ross elected not to testify.

Officer McCoy testified that he first met Ross when he was assigned to investigate a burglary complaint made by Ross in December 2011. Ross had reported that eleven of his firearms had been stolen, among other things. Officer McCoy testified that he next encountered Ross in May 2012, when he was investigating a report by the owner of the residence where Ross lived. The owner reported that her son had found several firearms in a spare bedroom, which then disappeared several days later. The owner had also reported that a firearm she owned was missing.

Officer McCoy testified that Ross was present when he arrived at the residence to investigate the report. He testified that Ross's bedroom was located at the top of a staircase and that there was a bifold door at the bottom of the staircase. Officer McCoy approached the staircase and called out to Ross, asking to speak with him about his previous report of missing firearms. Ross came downstairs and talked with Officer McCoy. Based on the owner's report, Officer McCoy asked Ross if some of the firearms he had reported stolen had been located. Officer McCoy testified that Ross said "[h]e had a couple of guns in his room." Officer McCoy also testified that he knew Ross had previously been convicted of a felony and that he asked Ross if he could look in his room and see the firearms that Ross said were in his possession. Ross responded by stating that he would need a search warrant.

Officer McCoy testified that he believed Ross was illegally possessing firearms and had possibly made a false report to a peace officer based on his December 2011 report. Officer McCoy then called his supervisor to obtain a search warrant. While he was waiting, he moved Ross four feet away from the staircase and stayed with Ross until his supervisor brought over the warrant.

Officer McCoy's supervisor, Deputy Twiss, testified that she first became involved when Officer McCoy called to request that she obtain a search warrant. She testified that Officer McCoy informed her that Ross had admitted he had firearms in his bedroom but would not allow him to look at them. Deputy Twiss was aware that Ross had a previous felony conviction. She prepared an affidavit and obtained a search warrant. Deputy Twiss took the search warrant to the residence and executed the warrant with Officer McCoy. She testified that Ross directed them to several firearms in his bedroom, which they seized pursuant to the warrant. They then arrested Ross.

Ross argued that the evidence arising from the search should be suppressed. During his cross-examination of Officer McCoy, Ross elicited testimony that he told Officer McCoy that he had three firearms in his bedroom and that he had specifically identified them by model. Ross argued that the three firearms he had identified to Officer McCoy were not "firearms" as defined under the Texas Penal Code and therefore Officer McCoy had no probable cause to support a search warrant. *See* TEX. PENAL CODE ANN. § 46.01(3) (West Supp. 2013) (defining firearm). He also argued that Officer McCoy had illegally detained him.

The trial court denied Ross's motion to suppress. The trial court also granted the State's motion *in limine*, requiring Ross to approach the trial court prior to eliciting testimony before the jury about the legality of the search.

### *Trial*

At trial, Officer McCoy testified to most of the same facts from the suppression hearing. When Ross cross-examined Officer McCoy, Ross had the following exchange with the trial court:

ROSS:   May I approach the bench, please?

TRIAL COURT:   You may.

(At the bench, on the record.)

ROSS:   Can I ask him questions about his testimony yesterday that wasn't in front of the jury?

TRIAL COURT:   No.

ROSS:   Okay.

TRIAL COURT:   You're limited to what's put on today or if you want to try to get something else out of him.

ROSS:   Well, if I get something else—

TRIAL COURT:   You can't say, Isn't it true yesterday you said this.

ROSS:   Okay. That's basically what I was planning to do. Okay. Well, I guess right now it's a cross-examination, correct?

TRIAL COURT:   Correct.

ROSS:   Okay. So I can only question him now about what he asked him; is that correct?

TRIAL COURT:   It's pretty wide open in Texas for cross-examination—

ROSS:   Oh, is it?

TRIAL COURT:   —on the initial cross, but what you can't do is refer back to yesterday's testimony.

ROSS:   Because he didn't introduce it; is that correct?

TRIAL COURT:   There's certain ways that that may or may not come in, but you can't do it right off the bat, and I can't advise you on how to do it. Mr. Palmer[1] can.

ROSS:   I wasn't asking that, but can I—can I ask him about what he testified yesterday when I call him as my witness?

TRIAL COURT:   You can talk to Mr. Palmer about how to get into that, but you can't just go into it.

ROSS:   I just can't go into it.

TRIAL COURT:   Right.

After this exchange, Ross then asked Officer McCoy "what probable cause did you have for requesting a search warrant?" The State objected. The trial court ultimately ruled "I'm not going to let you go back into whether it's a legal or illegal search based on probable cause."

## DISCUSSION

On appeal, Ross contends the trial court erred because it refused to allow him to cross-examine the officer about the search of his bedroom before the jury, arguing that the trial court's

---

[1] Although Ross refused court-appointed counsel, the trial court appointed Mr. Palmer as standby counsel. Mr. Palmer was available for Ross to consult with during the trial.

restriction on the scope of his cross-examination violated his rights under the Confrontation Clause. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). Ross argues that the Confrontation Clause guaranteed his right to cross-examine the officer about the legality of the search in order to receive a jury instruction on whether the firearm was legally obtained under article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005) (requiring the trial court to instruct the jury that it must disregard evidence that it believes or has reasonable doubt to believe was obtained in violation of the law, if the instruction is supported by evidence). He contends that a "criminal defendant <u>always</u> has the right to re-litigate [whether evidence was illegally obtained] before the jury" and that "it is clear from the record that [Ross] wanted this issue submitted to the jury." Despite his reliance on article 38.23, Ross maintains that he presents only one point of error under the Confrontation Clause.[2]

### A. Ross failed to preserve his Confrontation Clause argument for review

The State argues that Ross failed to preserve his Confrontation Clause argument for appellate review. The Court of Criminal Appeals has held, "and the Rules of Evidence make clear, that to preserve error in the exclusion of evidence, the proponent is required to make an offer of proof and obtain a ruling." *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005); TEX. R. EVID. 103(a)(2). In addition, "[t]he proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Reyna*, 168 S.W.3d at 177 (citing TEX. R. APP. P. 33.1.); *see also Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial

---

[2] In the face of the State's contention that Ross's point of error is multifarious, Ross has adamantly maintained that he "is seeking relief based upon one theory—the trial court's refusal to allow cross examination of the State's witness to re-litigate the legality of the search. Appellant claims that this error is fundamental error which violates the constitutional right to confrontation."

judge know what he wants, *why he thinks himself entitled to it*, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.") (emphasis added). Ross was not exempt from these requirements by virtue of his *pro se* representation. *See*, *e.g.*, *Grubbs v. State*, No. 14–12–00681–CR, 2013 WL 4487565, at *1 & n.1 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, pet. ref'd).

After reviewing the record, we conclude Ross never articulated to the trial court that the *Confrontation Clause* required the court to allow him to develop a record to support an instruction under article 38.23. Therefore, even if Ross did make it clear to the trial court that he wished to relitigate the legality of the search of his bedroom, we hold Ross failed to preserve error on the basis of the Confrontation Clause.[3] *See Reyna*, 168 S.W.3d at 179 ("Because [the appellant] 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' [that] rationale.") (quoting *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)); *see also O'Brien v. State*, No. 03-11-00504-CR, 2013 WL 491519, at *2 (Tex. App.—Austin Jan. 31, 2013, no pet.) (mem. op., not designated for publication); *McBurnett v. State*, No. 04-11-00021-CR, 2012 WL 2583407, at *3 (Tex. App.—San Antonio July 5, 2012, pet. ref'd) (mem. op., not designated for publication).

### B. Any error by the trial court was harmless beyond a reasonable doubt

Assuming that Ross's Confrontation Clause rights were violated and that he preserved the error, we would nevertheless hold the error harmless on the record before us. Ordinarily, we will reverse a conviction for constitutional error unless we "determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2. Relying on the

---

[3] As we discuss in the following section, Ross also did not make an offer of proof, which is ordinarily a prerequisite to preserve error in the exclusion of evidence. For reasons that will become apparent in the next section, we do not base our holding that Ross failed to preserve error on his failure to make an offer of proof.

United States Supreme Court's decision in *Davis v. Alaska*, Ross argues that the erroneous denial of his right of cross-examination is not subject to a harm analysis because it is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." 415 U.S. 308, 318 (1974) (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)). The Supreme Court has disavowed such a broad reading of *Davis*. *Delaware v. Van Arsdall*, 475 U.S. 673, 683 (1986) ("*Davis* should not be read as establishing, without analysis, a categorical exception to the harmless-error rule."); *see also id.* at 682 ("[T]he denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case."). Instead, like most constitutional errors, the violation of a defendant's constitutional rights under the Confrontation Clause is subject to a harmless error analysis. *Id.* at 684; *see also Shelby v. State*, 819 S.W.2d 544, 546–47 (Tex. Crim. App. 1991).

Ross contends the trial court unconstitutionally restricted his cross-examination of Officer McCoy, thereby denying him the opportunity to develop evidence that would have entitled him to an article 38.23 jury instruction. "A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Ross would have had to meet three requirements in order to be entitled to the submission of a jury instruction under article 38.23: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510. "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Id.*

When a defendant claims the trial court unconstitutionally restricted cross-examination of an adverse witness, we apply a three-prong harm analysis. *See Shelby*, 819 S.W.2d at 547 (citing

*Van Arsdall*, 475 U.S. at 684). First, we assume that the damaging potential of the cross-examination had occurred. *Id.* Second, we consider a number of nonexclusive factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the witness's testimony on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.*; *see also Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006). Finally, we determine if the error was harmless beyond a reasonable doubt in light of the first two prongs. *Shelby*, 819 S.W.2d at 547.

However, "[l]ike factors in other contexts, the *Van Arsdall* factors do not always present a 'one shoe fits all' analysis easily applied to every case." *Davis v. State*, 169 S.W.3d 660, 673 n.8 (Tex. App.—Austin 2005), *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006). This observation rings particularly true in Ross's case, where he contends that the trial court's restriction of his cross-examination was harmful because it denied him the opportunity to develop evidence that would have entitled him to an article 38.23 jury instruction. Due to the nature of Ross's claimed error, the factors outlined in *Van Arsdall* are inapposite to his case.[4] Instead, because Ross claims the trial court's error denied him the opportunity to develop evidence that would have entitled him to an article 38.23 jury instruction, we will determine whether the record shows that Ross could have merited such an instruction, had his cross-examination of Officer McCoy not been restricted.

Ross did not make an offer of proof when the trial court denied him the opportunity to cross-examine Officer McCoy about the search. *See* TEX. R. EVID. 103(a)(2) ("Error may not be

---

[4] In *Van Arsdall*, the trial court did not permit the defendant to cross-examine a State's witness about "the dismissal of a criminal charge against him—being drunk on a highway—after he had agreed to speak with the prosecutor about [the victim's] murder." 475 U.S. at 676. The defendant was therefore prevented from impeaching the State's witness and thereby prevented from exploring weaknesses in the State's case when the State had the burden of proof. By contrast, Ross had the burden to present evidence before the jury that would have entitled him to a jury instruction under article 38.23. Therefore, the issue is not whether Ross would have been able to discredit evidence offered by the State, but rather whether he would have met his burden to receive an article 38.23 jury instruction.

predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked."). Ordinarily, the failure to make an offer of proof would prevent us from finding reversible error based on the exclusion of evidence. *See Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009) ("The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful."). However, the record of the suppression hearing is before us, and we will assume that Ross intended to elicit that same testimony from Officer McCoy. We also assume that Ross would have elicited the same testimony from Deputy Twiss, although Ross does not complain that the trial court wrongfully restricted his cross-examination of Deputy Twiss.

Ross has not identified any evidence from the suppression hearing that would have created an affirmatively disputed, material issue of fact regarding the legality of the search of his bedroom, had he been permitted to fully cross-examine Officer McCoy about the search at trial. Our independent review of the record has also not uncovered any such evidence. Because no affirmatively disputed, material issue of fact existed, the trial court was within its authority to determine whether the evidence resulting from the search should have been suppressed.[5] Because the record before us shows that, even if Ross had been permitted to fully cross-examine Officer McCoy about the search, he would not have been entitled to a jury instruction under article 38.23, we hold that any error by the trial court in restricting Ross's cross-examination of Officer McCoy was harmless beyond a reasonable doubt.

---

[5] Ross has not complained of the trial court's suppression ruling on appeal.

## CONCLUSION

Because we hold Ross failed to preserve the error he presents on appeal and any such error was harmless, we overrule Ross's sole point of error and affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish