

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00385-CR

Gustavo **CUELLAR**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 6255
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: August 19, 2020

AFFIRMED

Gustavo Cuellar appeals his conviction for the offense of driving while intoxicated, third

or more. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2). In two issues, Cuellar argues the

trial court erred by (1) admitting unreliable retrograde extrapolation evidence of his blood-alcohol

content and (2) denying his request for a jury instruction pursuant to Texas Code of Criminal

Procedure Article 38.23. We affirm the trial court's judgment.

**BACKGROUND**

On May 2, 2017, Cuellar was indicted for driving while intoxicated, third or more. The indictment alleged that, on or about February 24, 2017, Cuellar operated a motor vehicle while intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, or by having an alcohol concentration of at least 0.08.

A jury trial was conducted, and the jury found Cuellar guilty of the charged offense. Thereafter, Cuellar and the State entered into a plea agreement as to Cuellar's punishment. The trial court followed the parties' plea agreement and assessed punishment at four years' confinement, to be served in a therapeutic community. Cuellar appeals.

**RETROGRADE EXTRAPOLATION**

In his first issue, Cuellar argues the trial court abused its discretion by admitting unreliable retrograde extrapolation evidence of his blood-alcohol content.

The party offering scientific evidence "must demonstrate by clear and convincing evidence that the evidence is reliable." *Mata v. State*, 46 S.W.3d 902, 908 (Tex. Crim. App. 2001). Reliability may be established "by showing the validity of the underlying scientific theory, the validity of the technique applying the theory, and [the] proper application of the technique on the occasion in question." *Id.* It is the trial court's responsibility "to determine whether [the] proffered scientific evidence is sufficiently reliable and relevant to assist the jury." *Id.* A trial court's decision to admit scientific evidence is reviewed for an abuse of discretion. *Id.* The evidentiary ruling "must be upheld so long as it is 'within the zone of reasonable disagreement.'" *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

"Retrograde extrapolation is the computation back in time of [an individual's] blood-alcohol level—that is, the estimation of the [blood-alcohol] level at the time of driving based on a

test result from some later time." *Mata*, 46 S.W.3d at 908–09. The science of retrograde extrapolation may be reliable under certain circumstances. *See id.* at 916. The expert's ability to clearly and consistently apply the science and explain it with clarity is a paramount consideration. *Id.* In evaluating the reliability of an expert's application of retrograde extrapolation in a given case, a court should consider the following factors:

> (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.

*See id.* at 916. The Texas Court of Criminal Appeals set forth the following guidelines for balancing these factors:

> If the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors. In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert.

*Id.* at 916–17.

Here, Cuellar does not challenge the science of retrograde extrapolation, nor does Cuellar challenge Pierce's qualifications to perform a retrograde extrapolation. Rather, Cuellar contends Pierce's testimony was unreliable because Pierce assumed certain facts that were contrary to the evidence and Pierce then used those erroneous assumptions in his retrograde extrapolation calculation. Cuellar also argues that Pierce did not know a sufficient number of his personal characteristics and behaviors to perform a reliable retrograde extrapolation.

On February 24, 2017 at approximately 8:00 p.m., surveillance footage from a gas station showed Cuellar's vehicle entering the gas station parking lot. Officer Morales of the Boerne Police Department testified that he observed Cuellar's vehicle "parked illegally over a couple of parking lanes" in the gas station parking lot. Officer Morales observed the vehicle for approximately thirty minutes, and, in his observation, he noted that the vehicle remained on, and no one entered or exited the vehicle. Officer Morales made the decision to approach the vehicle and determine if its occupants were okay. At approximately 8:30 p.m., Officer Morales initiated contact with Cuellar and, after concluding that Cuellar was intoxicated, arrested him for driving while intoxicated.[1] Thereafter, Cuellar was transported to Boerne Methodist Hospital, where one blood test was administered at 10:00 p.m. Because a single blood test was administered some time after the offense, Pierce needed to know "many" of Cuellar's personal characteristics to reliably perform a retrograde extrapolation. *See Mata*, 46 S.W.3d at 916–17; *see also Bhakta v. State*, 124 S.W.3d 738, 742 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("The longer the period between the stop and the BAC test tends to diminish the reliability of the test[].").

Pierce assessed the time of Cuellar's last drink and the time of Cuellar's last meal based on a questionnaire Cuellar filled out after his arrest. Based on the information that Cuellar had his last drink at 6:00 p.m. and his last meal at noon, Pierce assumed that Cuellar's blood draw at 10:00 p.m. was taken when Cuellar was in the elimination phase of his alcohol consumption.[2] The results of Cuellar's blood test showed that Cuellar had a blood-alcohol concentration of .257 at 10:00 p.m. Based on the assumption that Cuellar was in the elimination phase at the time of his blood draw,

---

[1] Officer Morales testified that he originally arrested Cuellar for public intoxication, but that his supervisor ordered him to arrest Cuellar for driving while intoxicated.

[2] "As alcohol is consumed, it passes from the stomach and intestines into the blood, a process referred to as absorption. . . . At some point after drinking has ceased, the person's BAC will reach a peak. After the peak, the BAC will begin to fall as alcohol is eliminated from the person's body. The body eliminates alcohol through the liver at a slow but consistent rate." *Mata*, 46 S.W.3d at 909.

Pierce testified that he could reliably perform an extrapolation back to the time of the offense.[3] Pierce estimated that Cuellar had a blood-alcohol concentration ranging from .272 to .302 at 8:30 p.m., with an average blood-alcohol concentration of .287. Pierce estimated that Cuellar had a blood-alcohol concentration ranging from .277 to .317 at 8:00 p.m., with an average blood-alcohol concentration of .297.

Cuellar contends Pierce's reliance on 6:00 p.m. as the time of Cuellar's last drink is contrary to the evidence because an open, three-quarters full, cold can of beer was found in Cuellar's vehicle at the time of his arrest. According to Cuellar, this evidence indicates that his last drink occurred sometime between 8:00 p.m. and 8:30 p.m. Therefore, Cuellar contends Pierce improperly assumed that Cuellar was in the alcohol elimination phase at the time of his blood draw, thereby rendering his retrograde extrapolation calculation unreliable.

"[T]he trial court does not abuse its discretion by allowing an expert to base testimony upon an assumption if there is a factual basis for the assumption in the record." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). Here, Pierce based his assumption that Cuellar was in the alcohol elimination phase at the time of his blood draw on Cuellar's statement that he had his last drink at 6:00 p.m. In his DWI questionnaire, which was admitted as evidence, Cuellar stated that he had his last drink at 6:00 p.m. Although an open, three-quarters full, cold can of beer was found in Cuellar's vehicle at the time of his arrest, the trial court could have reasonably credited Cuellar's statement that his last drink was at 6:00 p.m. *See id.* (recognizing that the trial court is "in the best position to judge the credibility of the witnesses" when deciding whether to

---

[3] Pierce testified that if Cuellar's last drink was between 8:00 p.m. and 8:30 p.m., it would affect his calculation because it would mean that Cuellar may have been in the absorption phase of his alcohol consumption at the time of his blood draw, instead of his elimination phase. If this were the case, Pierce stated, his current extrapolation calculation would be "overestimated." Pierce was not asked to quantify by how much his calculation would be overestimated.

admit expert testimony based upon an assumption). Because there is a factual basis for Pierce's assumption that Cuellar was in the alcohol elimination phase, the trial court's decision to allow Pierce's retrograde extrapolation testimony based on that assumption was not an abuse of discretion. *See id.* (concluding trial court did not abuse its discretion in allowing retrograde extrapolation testimony that was based on the expert's assumption that appellant was in the alcohol elimination phase because the expert based his assumption on medical records that stated when appellant had his last meal and drink).

Cuellar also argues that Pierce did not know a sufficient number of his personal characteristics and behaviors to perform a reliable retrograde extrapolation.

A significant number of Cuellar's personal characteristics and behaviors were known to Pierce, such as (1) Cuellar's gender, height, and weight; (2) that Cuellar "drank a couple" of drinks on the night in question; (3) that Cuellar's last drink was at 6:00 p.m.; (4) that Cuellar's last meal was a sandwich, which he ate around noon; (5) the time of the offense, which was approximately between 8:00 p.m. and 8:30 p.m.; (6) that Cuellar's blood was drawn at 10:00 p.m.; and (7) that Cuellar's blood results showed that Cuellar had a blood-alcohol concentration of .257 at 10:00 p.m. The trial court could have reasonably determined that Pierce had sufficient knowledge of Cuellar's personal characteristics and behaviors to reliably perform a retrograde extrapolation. *See, e.g.*, *Bhakta*, 124 S.W.3d at 742 (holding that, despite the significant delay between the traffic stop and the breath test, the expert had sufficient evidence on which to base a reliable extrapolation because the expert knew appellant's height and weight, appellant's last meal prior to being stopped, the time of appellant's last drink and meal, and the time and results of appellant's breath test); *see also Mata*, 46 S.W.3d at 916 ("[N]ot every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability.").

On this record, we conclude that the trial court's decision to admit Pierce's expert testimony on retrograde extrapolation was within the zone of reasonable disagreement and was, therefore, not an abuse of discretion.

**JURY INSTRUCTION**

In his second issue, Cuellar argues the trial court erred by denying his request for a jury instruction pursuant to Texas Code of Criminal Procedure Article 38.23.

Article 38.23(a) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). To be entitled to a jury instruction under article 38.23(a), the defendant must demonstrate that: (1) the evidence heard by the jury raises an issue of fact; (2) the evidence on that fact is affirmatively contested; and (3) the contested fact issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). "There must be a genuine dispute about a material fact." *Id.* "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Id.*

Cuellar requested the following jury instruction pursuant to article 38.23:

Our law provides that a warrantless arrest is lawful if it is made by an officer possessing probable cause to believe that an offense was occurring within the officer's presence. No evidence obtained by an officer as a result of an unlawful warrantless arrest of a person may be admitted against that person at trial. Therefore, if you find from the evidence that on February 24th, 2017, Officer P[ablo] Morales arrested the defendant for being intoxicated while operating a motor vehicle in a public place, and you further find that the officer did not have

probable cause to execute that arrest, or if you have a reasonable doubt whether the officer had probable cause, you will disregard the evidence seized as a result of that arrest and will not consider that evidence for any purpose whatsoever.

Probable cause exists for the purposes when the facts and the circumstances within the officer's personal knowledge and of which the officer has reasonably trustworthy information would be sufficient to lead a person of reasonable caution to believe that an offense was being committed or had been committed and that the person to be arrested was linked with the commission of that offense.

The proposed instruction does not ask the jury to decide a disputed factual issue. *See id.* at 511 ("It is the trial judge who decides what quality and quantum of facts are necessary to establish 'reasonable suspicion.' Only if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable."). Whether Officer Morales had "probable cause" to arrest Cuellar for driving while intoxicated is a question of law for the trial court, not a question for the jury. *See id.* ("The jury . . . is not an expert on legal terms of art or the vagaries of the Fourth Amendment. It cannot be expected to decide whether the totality of certain facts do or do not constitute ["probable cause" or] "reasonable suspicion" under the law."). Thus, the trial court did not err by refusing to include Cuellar's proposed article 38.23(a) instruction. *See id.* at 509–10 (stating an article 38.23(a) jury instruction is limited to disputed issues of fact).

In his brief, Cuellar claims a dispute of fact existed between Officer Morales's testimony at trial and Officer Morales's affidavit for a warrant for a mandatory blood draw. At trial, Officer Morales testified that he observed Cuellar's vehicle "parked illegally over a couple of parking lanes" in the gas station parking lot. After approximately thirty minutes, Officer Morales approached the vehicle to determine if its occupants were okay. Upon approaching the vehicle, Officer Morales noted that Cuellar was in the driver's seat and that Cuellar was the sole occupant of the vehicle. Officer Morales knocked on the vehicle's window multiple times in an attempt to get Cuellar's attention, but Officer Morales stated Cuellar looked at him with a blank stare. Officer

Morales stated that because Cuellar was not rolling his window down in response to his knocks, he opened Cuellar's vehicle door. Officer Morales's affidavit for a warrant for a mandatory blood draw mirrors his trial testimony; however, in his affidavit, Officer Morales makes no mention of Cuellar's "illegal parking." Thus, according to Cuellar, a dispute of fact exists as to whether Officer Morales approached his vehicle for "illegal parking."

"To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question." *Id.* at 513. Here, although the affidavit omits Cuellar's "illegal parking," there is no *affirmative* evidence that puts the fact that Officer Morales approached Cuellar's vehicle for "illegal parking" in dispute. *Cf. id.* at 513 ("[O]ne issue was whether appellant exceeded the speed limit of 55 m.p.h. through a construction site, giving Officer Lily a reasonable suspicion to stop him. If Officer Lily testifies that appellant did speed and Witness Two (or appellant) testifies that he did not speed, this disputed factual issue must be submitted to the jury."); *see also Hailey v. State*, 413 S.W.3d 457, 497 (Tex. App.—Fort Worth 2012, pet. ref'd) ("Appellant brought forth no independent affirmative, factual evidence—beyond his mere unsuccessful cross-examination arguments—that disputed Butler's testimony.").

Because there was no disputed fact issue, Cuellar was not entitled to an article 38.23(a) jury instruction and, thus, the trial court did not err by refusing to include the instruction. *See Madden*, 242 S.W.3d at 510.

## CONCLUSION

The trial court's judgment is affirmed.

Rebeca C. Martinez, Justice

DO NOT PUBLISH